639 S.E.2d 323 (2006)
In the Interest of C.M. et al., children.
No. A06A1812.
Court of Appeals of Georgia.
October 24, 2006.
Reconsideration denied November 21, 2006.
*324 Flint & Connolly, John F. Connolly, Canton, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Susan C. Stanton, Woodstock, for appellee.
*325 BLACKBURN, Presiding Judge.
Following the termination of her parental rights, the mother of C.M. and A.M. appeals, contending that: (1) the evidence was insufficient to support the juvenile court's finding of parental misconduct or inability; (2) the termination was not in the best interests of the children; (3) during the hearing on the mother's motion for new trial, the juvenile court erred in not admitting new evidence from a Department of Family and Children Services ("Department") assessment done after the termination ruling; (4) the juvenile court erred in failing to grant the mother a continuance of the termination hearing due to her family medical emergency; (5) the Department failed to make adequate efforts to find a relative placement for the children; and (6) she received ineffective assistance of counsel at the termination hearing. For the reasons that follow, we affirm.
On appeal, we review the evidence in a light most favorable to the lower court's judgment and determine only whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. We defer to the juvenile court's factfinding and thus neither weigh the evidence nor evaluate witness credibility.
(Citation and punctuation omitted.) In the Interest of J.K.[1] So viewed, the record shows that C.M., born in December 2000, and A.M., born in August 2002, first came into the custody of the Department under a shelter care order issued in January 2003, due to the mother's drug abuse and failure to protect the children from her stepfather, who molested the mother when she was a child. On January 31, 2003, the Department filed a deprivation petition in the Juvenile Court of Cherokee County, alleging substance abuse, parenting and supervision issues, unstable housing, and lack of employment. In an order dated April 24, 2003, nunc pro tunc February 12, 2003, the juvenile court found the children deprived, placed the children in the custody of the Department for 12 months, and ordered the Department to develop a case plan requiring the mother to undergo substance abuse evaluation, attend parenting classes, maintain stable housing, and obtain stable employment.
The Department prepared a case plan according to the order, and after the mother failed to adequately comply with the case plan, the Department filed a second deprivation petition in November 2003. Following a hearing, the mother consented to a six-month extension of the Department's custody of the children, and the juvenile court ordered the mother to complete her case plan. After continuing to work with the mother, in June 2004, the Department filed a petition to terminate the mother's parental rights. The Department also filed a petition to extend custody, which was granted. After several continuances, due in part to the mother's incarceration for a probation violation due to speeding, a termination hearing was held over two days (one in February 2005, and one in May 2005). At the close of the evidence on the second day, the juvenile court orally ruled from the bench and granted the termination. In November 2005, the juvenile court issued a written order terminating the mother's rights. The mother filed a motion for new trial, which was denied after a hearing, giving rise to this appeal.
1. The mother contends that there was insufficient evidence of parental misconduct or inability, in that she adequately complied with her case plan for reunification. We disagree.
In a termination of parental rights case, OCGA § 15-11-94(a) requires the trial court to consider whether there is clear and convincing evidence of parental misconduct or inability as provided in [OCGA § 15-11-94(b)]. . . . The four criteria that the court must find in order to hold that parental misconduct or inability is shown are: (i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or *326 is likely to cause serious physical, mental, emotional, or moral harm to the child. In the Interest of J.K., supra, 278 Ga.App. at 566-567(1), 629 S.E.2d 529. We discuss each element of this analysis below.
(a) Finding of Deprivation. Under OCGA § 15-11-2(8), a "deprived child" is
a child who: (A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals; (B) Has been placed for care or adoption in violation of law; (C) Has been abandoned by his or her parents or other legal custodian; or (D) Is without a parent, guardian, or custodian.
(Emphasis supplied.)
Here, C.M. and A.M. were previously deemed deprived in an order which the mother consented to at the time, and the children were not in her custody at the time of the termination proceedings.
[W]here the child is not in custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.
(Emphasis supplied.) OCGA § 15-11-94(b)(4)(C).
With respect to maintaining a parental bond, the evidence showed that outside of the week before the termination hearing, the mother had not visited her children once in the last nine months. Prior to that, the mother's visitation was irregular, often missing visits or needing rescheduling. She failed to give the children their birthday presents and did not make efforts to contact the foster parents, who had custody of the children.
With respect to a reunification plan, the mother's case plan required her to undergo substance abuse evaluation, attend parenting classes, maintain stable housing, provide child support, submit negative drug screens, obtain stable employment, and cooperate with the Department. The evidence from the hearing shows that the mother did complete parenting classes and undergo substance abuse evaluation. However, with respect to maintaining stable housing, the evidence showed that for the two-year period leading up to the termination hearing, the mother moved at least nine times, and the mother could not clearly recall all of her prior residences. During this time, the mother did not maintain regular contact with the Department, and on at least one occasion, the Department could not perform the required drug screening, because the mother could not be located. With respect to maintaining a stable job, the mother had worked sporadically at several short-term jobs including a month at a convenience store, six months at an attorney's office, "not very long" (in the mother's words) at a discount retailer, and a short time at a gas station. During this time, the mother failed to provide the Department with adequate documentation of her employment, as required by her case plan. With respect to providing care and support to the children, the mother paid $60 of $900 owed in child support. Based on this evidence, despite partially complying with some short-term components of the case plan, the evidence is clear that the mother failed to complete substantial portions of the case plan as required.
Therefore, in light of this history, there was sufficient evidence to show, in accordance with OCGA § 15-11-94(b)(4)(C), that the mother failed to comply with her case plan, failed to adequately maintain a parental bond, and failed to provide support for the children as required by law, thereby justifying a finding of deprivation.
(b) Lack of proper parental care or control by the parent is the cause of the deprivation. Here, the evidence shows that the mother's *327 lack of care or control is the cause of the children's deprivation. The mother's history of erratic visitation, unstable housing and employment (i.e., her failure to comply with her case plan) is the cause of the instability, lack of bonding, and lack of child support that her children would face if reunited with her. Therefore, the evidence supported a finding that the mother's lack of proper parental care or control was the cause of the deprivation. See In the Interest of C.T.M.[2] ("[g]iven that the mother failed to complete two of the most important goals of her case plan, the juvenile court was authorized to find by clear and convincing evidence that the mother's lack of parental care was the cause of the deprivation"); In the Interest of A.C.;[3] see also In the Interest of J.K., supra, 278 Ga.App. at 566(1), 629 S.E.2d 529 ("evidence displaying one of the criteria [can] prove or at least partially prove one or more of the other criteria").
(c) Lack of proper parental care or control is likely to continue. "In determining whether the conditions of deprivation are likely to continue, the juvenile court may consider the past conduct of the parent in ascertaining future conduct." In the Interest of J.D.[4] "And a juvenile court may place more weight on negative past facts than promises of future conduct." (Punctuation omitted.) In the Interest of A.C., supra, 280 Ga.App. at 217(1)(c), 633 S.E.2d 609.
Here, the mother failed to take advantage of regular visitation opportunities, did not establish stable housing, did not maintain stable employment, and provided inadequate child support. She did not maintain communication with the children's foster parents about the children or her availability for visitation. Given the mother's failure to comply with the case plan for more than one year prior to the termination proceeding, the evidence supported the juvenile court's finding that the conditions of deprivation were likely to continue. See In the Interest of A.C., supra, 280 Ga.App. at 217-218(1)(c), 633 S.E.2d 609.
(d) The continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. When the children were taken into custody by the Department, they were placed separately with foster parents. A.M.'s foster parent testified that when A.M. first arrived in their home, he was unemotional, did not sleep through the night, and did not have a routine schedule. Having stayed with his foster parents for two years, A.M. has been thriving and shows no signs of wanting to return to the mother. When the foster parents attempted to facilitate visitation with the mother, the mother would often fail to show up, which caused C.M. to get upset. Except for one meeting five days prior to the hearing, the mother had not contacted A.M.'s foster parents in eleven months. In light of the children's bonds formed with the foster parents, the lack of bonds formed with the mother, the "unemotional" state of A.M. upon arriving in foster care, and C.M.'s reaction to the mother's failed visits, the evidence supported a finding that continued deprivation would likely cause serious mental or emotional harm to the children. See In the Interest of T.J.[5] ("where . . . the evidence showed no parental bond between parent and child, the child had adapted well to foster care, and the foster parent wished to adopt, this was sufficient to support the juvenile court's conclusion that continued deprivation was likely to harm the children") (punctuation omitted).
Therefore, in light of the presence of the four factors in OCGA § 15-11-94(b)(4)(A), there was sufficient evidence to justify a finding of parental misconduct or inability.
2. The mother next contends that the juvenile court erred in finding that the termination was in the best interests of the children. We disagree.
"In determining how the interest of the child is best served, the juvenile court is *328 vested with a broad discretion which will not be controlled in the absence of manifest abuse." (Punctuation omitted.) In the Interest of M.L.P.[6] The same evidence showing parental misconduct or inability may establish this requirement. See In the Interest of H.E.M.O.[7]
Here, the evidence showed that the foster parents of each child had fully incorporated the child into their families, treated the children as their own, and desired to adopt the children. A.M. referred to his foster mother as "mommy" and did not recognize the biological mother at their last visit (which was the first visit in nine months). C.M. calls the biological mother by her name, calls the foster mother "mommy," and is "doing wonderful" with his current foster parents. Each child's foster parents regularly communicate with the other child's foster parents (at times more than once a week), facilitating visits between C.M. and A.M. and letting the children sleep over at each other's house.
In contrast to the stability provided by the foster parents, the biological mother failed to regularly visit the children and went for months at a time without seeing the children or communicating with the foster parents. The mother failed to give birthday presents to the children and missed a Christmas visit (not calling until a week later). Despite the mandates of her case plan, she failed to provide financial support, to obtain stable housing, or to obtain stable employment. In light of the children's bonds formed with the foster parents, who wish to adopt the children, and the mother's failure to complete her case plan and adequately maintain a relationship with the children, the juvenile court did not abuse its discretion in finding that termination is in the best interests of the children.
3. The mother next contends that the juvenile court erred in not admitting evidence at the motion for new trial hearing of a new Department investigation (relative to a newly born child) that found insufficient evidence to support a deprivation petition. We disagree.
"The admission of evidence lies in the sound discretion of the trial court." Dept. of Transp. v. Mendel.[8] At the close of the evidence on the second day of the termination hearing (May 18, 2005), the juvenile court issued an oral ruling terminating the mother's parental rights. In November 2005, the juvenile court entered a written order with findings of fact terminating the mother's parental rights and dated the order November 22, 2005, nunc pro tunc May 18, 2005. The mother filed a motion for new trial, and the court held a hearing on the motion on December 8, 2005. Between the May ruling and the December hearing on the motion for new trial, the mother gave birth to a third child, and the Department investigated the mother's fitness, apparently concluding that the conditions did not warrant pursuing a deprivation petition as to the third child. At the hearing on the motion for new trial, the mother sought to introduce evidence of the Department's investigation, which the juvenile court excluded.
The appropriate "question for termination is if the child were [at the time of termination] returned to the parent's care and associated environment, would the child be harmed thereby." In the Interest of J.K., supra, 278 Ga.App. at 567(1), 629 S.E.2d 529. Here, the mother had nearly two years to comply with her case plan and failed to do so. The trial court correctly considered this in its analysis, as directed by OCGA § 15-11-94(b)(4)(C)(iii). In light of the mother's history and failure to make adequate progress under her case plan as to C.M. and A.M., we find that the juvenile court did not abuse its discretion in declining to admit subsequent evidence of the conditions surrounding a third newly born child, as those conditions do not change the mother's treatment of and lack of bond with C.M. and A.M.
*329 4. The mother next contends that the trial court erred in failing to grant her a continuance on the second day of the termination hearing. We disagree.
"Granting or refusing a continuance is a matter within the sound discretion of the trial court, and absent a clear showing of abuse, this [C]ourt will not reverse for refusing to grant a continuance." (Punctuation omitted.) Talmadge v. Elson Properties.[9] Here, on the morning of the second day of the termination hearing, the mother was at the hospital with her grandmother, having ridden to the hospital in an ambulance with her grandmother the previous day. The court did not convene until 1:30 p.m., but the mother did not arrive at the termination hearing until the close of the evidence later that afternoon. Upon her motion, the court reopened the evidence and allowed her to testify. She now complains that the court should have continued the hearing until a later day, despite her arrival and participation. However, the mother was allowed a full opportunity to provide her testimony and her attorney participated in the entire hearing; therefore, we hold that the trial court did not abuse its discretion in not continuing the hearing. See id. (trial court did not err in denying request for continuance where trial court reopened evidence and gave the requesting party an opportunity to testify).
5. The mother contends that the trial court erred in finding that the Department made reasonable efforts to find a relative placement for the child, in accordance with OCGA § 15-11-103(a)(1). We disagree.
Here, both the father and the mother's parental rights were terminated. In this situation, OCGA § 15-11-103(a)(1) provides as follows:
If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child.
We note that
OCGA § 15-11-103(a)(1) does not require a trial court to give preference to family members in making a placement of a child following termination of parental rights. Rather, the statute states that a placement shall be made "if the court determines such placement is the most appropriate for and in the best interest of the child." A trial court's determination that placement with a relative is not in the best interest of the child will not be disturbed by this Court absent an abuse of discretion.
(Citation and punctuation omitted.) In the Interest of S.V.[10]
Here, prior to termination, the Department investigated placement with an uncle (who did not want the children), the mother's parents (who were financially unstable and had a history of child abuse), and the mother's grandmother (who was on disability and in poor health). On the other hand, the children had formed a bond with foster parents who were raising C.M. and A.M. as their own children, along side the foster parents' other children. In light of this evidence, we cannot say the juvenile court abused its discretion in failing to place the children with the mother's family members.
6. The mother finally contends that she received ineffective assistance of counsel at the termination hearing. This enumeration is also without merit.
In order to prevail on a claim of ineffective assistance of counsel the mother must show that her counsel's performance was deficient and that the deficient performance was prejudicial to her defense. To meet the first prong of this test, the mother must overcome the strong presumption that counsel's performance fell within a wide range of professional conduct and *330 that counsel's decisions were not made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. The second prong requires the mother to show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different.
(Citations and punctuation omitted.) In the Interest of A.H.P.[11]
Without explanation or argument in her brief, the mother avers that her trial counsel was ineffective in the following ways: (a) failing to call witnesses requested by the mother who had information essential to her representation; (b) failing to properly conduct discovery; (c) failing to make herself available to the mother and adequately consulting with the mother; (d) failing to "follow up" on the issue of relative placement with the trial court and the Department; and (e) failing to properly object and argue the mother's request for a continuance of the termination hearing.
(a) Failing to call witnesses. The mother does not explain on appeal which witnesses her trial counsel failed to call or how she was harmed by the alleged failure, but during the motion for new trial, we note that the mother's trial counsel was questioned as to why she did not call a certain former employer of the mother to testify. Trial counsel explained that the person, formerly an attorney, had been disbarred because of child molestation charges and the mother's trial counsel did not believe such a witness would be beneficial to the mother's case: "You know, she's asking for her children back, but she works for a man who has been found to be a child molester. I just thought that might not be something we want everybody in the courtroom to know." Under these circumstances, we fail to see how this decision fell outside the range of reasonable professional judgment.
(b) Failing to properly conduct discovery. Also without further explanation, the mother cites to a colloquy in the motion for new trial transcript in which her trial attorney testifies about her discussions with the mother about the importance of transportation and stable housing. The mother's attorney explained that she spoke with the mother "many times" about the issue of obtaining stable housing and discussed transportation to visitation with both the Department and the mother. The mother makes no other argument or reference to how discovery was flawed or how she was harmed. Accordingly, we discern no basis for this claim.
(c) Failure to be available to the mother. During the motion for new trial hearing, the mother's attorney testified that she had "many conversations" with the mother about various issues relevant to her case. Her attorney testified that,
A: [E]very time I talked to [the mother] . . . the employment changed. The address changed. Everything changed. So it was very difficult to keep up with exactly what [the mother] was doing and exactly what she wanted me to do.
. . .
I begged her to get a place to stay and stay there. I begged her. I mean over and over.
. . .
Q: Do you feel like they listened to what you had to say?
A: No.
. . .
To be quite honest, I didn't feel up to that point [the termination hearing] that she had taken her case very seriously at all.
Based on this, and in the absence of a showing how the attorney's actions compromised the mother's representation, we discern no error in the court's finding that the mother had adequate access to counsel.
(d) Failure to properly follow up on the issue of relative placement. In light of our ruling in Division 5, this claim is without merit.
(e) Failure to properly object and argue for a continuance of the termination hearing. *331 In light of our ruling in Division 4, this claim is without merit.
Judgment affirmed.
MIKELL and ADAMS, JJ., concur.
NOTES
[1] In the Interest of J.K., 278 Ga.App. 564, 565, 629 S.E.2d 529 (2006).
[2] In the Interest of C.T.M., 278 Ga.App. 297, 301(2)(a)(ii), 628 S.E.2d 713 (2006).
[3] In the Interest of A.C., 280 Ga.App. 212, 217(1)(b), 633 S.E.2d 609 (2006).
[4] In the Interest of J.D., 280 Ga.App. 861, 864(1)(c), 635 S.E.2d 226 (2006).
[5] In the Interest of T.J., 281 Ga.App. 308, 315(2), 636 S.E.2d 54, (2006).
[6] In the Interest of M.L.P., 236 Ga.App. 504, 510(1)(d), 512 S.E.2d 652 (1999).
[7] In the Interest of H.E.M.O., 281 Ga.App. 281, 288(2), 636 S.E.2d 47 (2006).
[8] Dept. of Transp. v. Mendel, 237 Ga.App. 900, 902(2), 517 S.E.2d 365 (1999).
[9] Talmadge v. Elson Properties, 279 Ga. 268, 270(3), 612 S.E.2d 780 (2005).
[10] In the Interest of S.V., 281 Ga.App. 331, 333(2), 636 S.E.2d 80 (2006).
[11] In the Interest of A.H.P., 232 Ga.App. 330, 334-335(2), 500 S.E.2d 418 (1998).