*E. Kendrick Smith*, amicus curiae.

A07A0117. IN THE INTEREST OF I. G., a child.
(645 SE2d 649)

SMITH, Presiding Judge.

The mother of two-year-old I. G. appeals the juvenile court's order terminating her parental rights.[1] She contends that clear and convincing evidence did not support the juvenile court's finding that her parental rights to the child had been lost. We disagree and affirm.

"On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Citation, punctuation and footnote omitted.) *In the Interest of D. E.*, 282 Ga. App. 519 (639 SE2d 526) (2006). So viewed, the evidence demonstrates that the mother, who is mentally disabled, came to the attention of the Peach County Department of Family and Children Services ("DFACS") in 2004, at the age of 17, after she alleged that she had been molested by her stepfather. DFACS took the mother into foster care and placed her in a residential treatment home. Approximately four months later, the mother gave birth to I. G. A paternity test confirmed that the grandmother's husband was in fact I. G.'s father.

I. G. was placed in foster care at birth. The juvenile court adjudicated I. G. to be deprived and concluded that the child could not be placed with the mother because the mother had behavioral issues, was mentally handicapped, and was in foster care herself, and that the child could not be placed with the grandmother because the mother had identified her stepfather, the grandmother's husband, as I. G.'s father. In a subsequent order determining that I. G. remained deprived, the juvenile court found that the mother was "mildly retarded."

While a psychiatrist did not testify at the hearing, evidence demonstrated that the mother was suffering from ongoing mental health issues. The mother had been in special education classes from the first grade, and had been unable to continue in public school due to her behavior. She was on medication for what the grandmother described as depression and a bipolar condition and had been placed in a residential home for treatment for her behavior while she was

---

[1] The trial court also terminated the parental rights of I. G.'s putative father, who did not appear at the hearing.

pregnant. She was also classified as disabled for purposes of receiving social security disability benefits.

DFACS developed a reunification case plan for the mother, which included attending parenting classes, continuing her mental health treatment, taking her medication, maintaining stable housing, and enrolling in treatment for the victims of sexual abuse. The mother failed to complete the goals set forth in her initial or any subsequent case plan, although she did enroll in a sexual abuse treatment program which she did not complete.

After the mother turned 18, she left foster care and returned to live with her mother and stepfather. The stepfather subsequently has been imprisoned. The mother has not attempted to get a job or a driver's license. She was studying at home to receive a "special ed diploma." She testified that after graduating she would get her own apartment and a job. However, the mother also estimated that she could earn $100 to $125 a week and that her monthly expenses would be $1,625, of which she allocated $1,000 to the cost of clothing for herself and the child. She has not paid child support.

The mother's caseworker testified that the mother could not take care of I. G. without 24-hour supervision. The caseworker was also concerned by the mother's aggressive behavior, as demonstrated by her "outbursts," fighting in school, and cursing teachers. According to the grandmother, the mother could take care of the child, but "with me giving her a hand." DFACS has located an adoptive placement for I. G. and intends to proceed with the adoption.

A juvenile court's termination of parental rights is a two-step process:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Citations and footnotes omitted.) *In the Interest of T. F.*, 250 Ga. App. 96, 97-98 (1) (550 SE2d 473) (2001). See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv).

(a) *Parental misconduct or inability*. Construing the evidence in a light most favorable to the juvenile court's findings, we address each of the factors required to establish parental misconduct or inability.

(i) *The child is deprived*. Because she did not appeal the juvenile court orders finding I. G. to be a deprived child, the mother is bound by the finding of deprivation. *In the Interest of T. P.*, 270 Ga. App. 700, 704 (1) (608 SE2d 43) (2004).

(ii) *Lack of parental care or control*. In its previous orders, the juvenile court also found that I. G. was without proper parental care and control and that the cause of I. G.'s deprivation was attributable to the mother's neglect. "The mother's failure to appeal the deprivation order[s] also renders the juvenile court's determination on this second factor binding." (Citations omitted.) *In the Interest of K. N.*, 272 Ga. App. 45, 52 (a) (2) (611 SE2d 713) (2005).

(iii) *Cause of deprivation is likely to continue*. The juvenile court found that I. G.'s deprivation was likely to continue. The mother argues that there was no competent evidence of mental disability from which the trial court could conclude that she was not capable of parenting I. G. in the future. However, notwithstanding the issue of the mother's mental health, the juvenile court was authorized to conclude that I. G.'s deprivation would continue in light of her failure to complete her reunification case plans.

According to the caseworker, the mother failed to meet any of her case plan goals, which included taking her medication, following up on mental health care treatment, and attending parenting classes. When the caseworker informed the mother that she was required to complete the case plan, the mother "would just look at me, no response." "Given the mother's failure to complete the goals of her case plan, the juvenile court was authorized to find that [I. G.'s] deprivation would likely continue if reunited with [his] mother." *In the Interest of D. W. A.*, 253 Ga. App. 346, 348-349 (559 SE2d 100) (2002); see *In the Interest of D. P. E.*, 282 Ga. App. 529, 532 (639 SE2d 535) (2006) (mother's instability in housing and employment and her failure to comply with reunification case plan authorized finding that deprivation was likely to continue); *In the Interest of G. L. H.*, 209 Ga. App. 146, 150 (2) (433 SE2d 357) (1993) (failure to comply with court-mandated mental health counseling or parenting classes may be considered in determining the likelihood of whether the deprivation is likely to continue).

(iv) *Continued deprivation likely to cause harm to the child*. The juvenile court also found that I. G.'s continued deprivation was likely to harm the child. The mother contends that the State did not show that I. G. would be harmed if the mother continued to have a relationship with her child. See *In the Interest of A. T.*, 271 Ga. App. 470, 473-474 (610 SE2d 121) (2005) (where evidence showed only

mother's inability to parent, termination of parental rights was not authorized); *In the Interest of D. F.*, 251 Ga. App. 859, 862 (555 SE2d 225) (2001) (mother's inability to care for children does not necessarily mean that her current relationship with them is harmful). The appropriate inquiry as to this factor, however,

> is whether the child *would be* harmed if returned to the parent's care and control, associated environment, and state of deprivation. In other words, although the child was found deprived on the hearing date, the question for termination is if the child were returned to the parent's care and associated environment, would the child be harmed thereby?

(Emphasis in original.) *In the Interest of J. K.*, 278 Ga. App. 564, 567 (1) (629 SE2d 529) (2006) (whole court). The juvenile court found as to the issue of harm that the mother was incapable of caring for or protecting the child and that the mother's presence in the grandmother's home made no difference, as the grandmother had been unable to protect the mother when the mother was a child. The trial court also found that the mother failed to support the child or complete a case plan.

> These express findings were sufficient to justify the juvenile court's conclusion that continued deprivation in this case would cause serious mental, emotional, and moral harm to the children, since the return of these children to their mother's care in her present and most likely continuing condition would likely result in serious harm to the children.

Id. at 568 (2).

Further, "the juvenile court was authorized to consider the [child's] need for a stable home situation and the detrimental effects of prolonged foster care." *In the Interest of M. L.*, 227 Ga. App. 114, 117 (2) (488 SE2d 702) (1997). DFACS had identified a permanent home for I. G. with an adoptive family. See *In the Interest of D. L. T.*, 283 Ga. App. 223 (641 SE2d 236) (2007) (likely harm from further deprivation shown where mother failed to take steps required for reunification while foster parents expressed desire to adopt the child); cf. *In the Interest of D. F.*, supra, 251 Ga. App. at 862 (no adoptive parents identified).

(b) *Best interest of the child.* If there is clear and convincing evidence of parental misconduct or inability, the juvenile court is required to determine whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the

subject of the proceeding, including the need for a secure and stable home. See OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998). Considering the mother's inability or unwillingness to take the steps required for reunification with I. G. and that a family wishes to adopt the child, the trial court was entitled to find that termination of the mother's parental rights was in the child's best interest. See *In the Interest of A. C.*, 272 Ga. App. 165, 168 (2) (611 SE2d 766) (2005).

The mother argues that it was in I. G.'s best interest that he be placed with the grandmother on a temporary basis and then returned to the mother at a later date.[2] We disagree. The juvenile court had considered and rejected a temporary placement of I. G. with the grandmother during the deprivation proceedings. As to the termination proceedings, "[t]his case is not dependent upon the parenting skills of the grandmother who has no parental rights in the child, but upon the parental rights of the natural mother." *In re S. R. J.*, 176 Ga. App. 685, 686 (337 SE2d 444) (1985).

Given the foregoing, and having reviewed the entire record, we find there is sufficient clear and convincing evidence to support the juvenile court's decision to terminate the mother's parental rights.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED APRIL 24, 2007.

*Robert M. Bearden, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, W. Ashley Hawkins*, for appellee.

---

[2] The mother does not argue that the trial court erred in failing to place I. G. with the grandmother in making a post-termination disposition of custody under OCGA § 15-11-103.