651 S.E.2d 527 (2007)
In the Interest of H.M., a child.
No. A07A1232.
Court of Appeals of Georgia.
September 5, 2007.
*528 Curtis Wayne Miller, Lithonia, for Appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Saudia Leshawna Crawford, Appellee.
RUFFIN, Judge.
The natural mother of H.M. appeals the juvenile court order terminating her parental rights to her daughter, who was then two years old.[1] On appeal, the mother challenges the sufficiency of the evidence supporting termination and asserts that the juvenile court's ruling violates her constitutional rights. For reasons that follow, we affirm.
1. In reviewing an order terminating parental rights, we construe the evidence in a light most favorable to upholding the juvenile court's findings and judgment.[2] We do not weigh the evidence or evaluate witness credibility, but "determine only whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right[s] to custody should be terminated."[3]
Viewed in this manner, the record shows that H.M. was born on July 26, 2004. A shelter care order was entered the following day, and the Department of Family and Children Services ("DFCS") took temporary custody of H.M. Shortly thereafter, DFCS filed a deprivation petition alleging, among other things, that the mother suffered from mental health problems, including schizophrenia; had failed to seek consistent mental health treatment; had a history of unstable employment and housing; and had four other children who were in DFCS custody due to the mother's neglect and mental health concerns.
The juvenile court adjudicated H.M. deprived in September 2004. In subsequent orders, the juvenile court extended its deprivation finding, noting that the conditions of deprivation had not been alleviated and that the mother had not completed the reunification case plan developed for her.
On March 31, 2006, the State petitioned to terminate the mother's parental rights to H.M. At the hearing on the petition, the State offered evidence that the mother had been diagnosed with schizoaffective disorder, suffering from symptoms such as delusions, hallucinations, and threatening behavior. Dr. Andrew Gothard, a psychologist who evaluated the mother prior to the hearing, testified that her condition is a hybrid between a psychotic disorder and a mood disorder. Although the condition is treatable with medication, intermittent use of the medication results in "up and down patterns" of stability and instability. From conversations with the mother, he learned that her mental problems had resulted in several hospitalizations, and her lifestyle was marked with periods of significant instability over an approximate nine-year span that left her unable to care for H.M. and her other children.
Gothard asserted that the mother needed ongoing psychotherapy and medication management. He could not give a firm opinion as to whether her instability would continue because she failed to appear for several appointments and did not complete the mental health evaluation. But he testified that given her past history, "there is a strong risk" of continued instability, and he recommended that H.M. not be returned to her.
Patina Hester, the DFCS supervisor over H.M.'s case, testified that the mother's four older children had been in DFCS custody since 1997. Although they were returned to the mother's care in 1998, they were subsequently *529 removed again. H.M.'s younger sister was also placed in foster care at an early age.
With respect to H.M., Hester testified that the mother had not completed her case plan for reunification. Although she was currently employed, had attended required parenting classes, and had spoken with someone about childcare, the mother lacked stable housing and was not consistently taking medication prescribed to address her mental health concerns. DFCS also could not confirm the mother's claim that she had been seeing a mental health professional.
Moreover, the mother had not attended many of the scheduled visits with H.M., and she admittedly had no bond with her daughter, who did not know her as her mother. The mother also had not provided any financial support or gifts to H.M., and she never asked to see H.M. on special occasions, such as birthdays. Hester further testified that H.M. had been in the same foster home since shortly after her birth, and her foster parents wished to adopt her.
Lesa James, a case manager with a private company that contracted with DFCS to help parents comply with case plans, was assigned to the mother's case. James reviewed the case plan with the mother, who understood what she needed to do to gain custody of her child. According to James, however, the mother did not "follow up" with her or complete the parenting requirements, and James had difficulty contacting her. James also offered to help the mother find housing, but the mother's schedule prevented them from arranging a time to do so, and the mother never called to request help. James ultimately closed the case and referred it back to DFCS because the mother made little effort to work with her.
The mother testified that she was employed and had secured an apartment of her own the month before the termination hearing, but was not yet living there and did not have a lease. At that point, she was residing with an aunt, as well as spending time at a hotel. When asked about the periods spent at the hotel, the mother explained: "I like to get away too as an adult and do my time and my thing." The mother further testified that she was taking her medication and, for approximately four months, had been seeing a psychiatrist once a month. But she complained that she sometimes had trouble getting medication from her doctor, stating: "I take [the medication] when I have it."
The juvenile court terminated the mother's parental rights to H.M. following the hearing. In a lengthy order, the court found, among other things, that the mother had mental health concerns that affected her ability to care for and parent H.M.; lacked stable housing; failed to complete her case plan for reunification; had four older children in DFCS custody; had been previously diagnosed with schizophrenia; had a history of not taking prescribed medication and not seeking consistent mental health treatment; failed to visit or communicate regularly with H.M.; and did not support her child.
Before terminating parental rights, a juvenile court must find clear and convincing evidence of parental misconduct or inability.[4] Such misconduct or inability is shown through evidence that: (1) the child is deprived; (2) the parent's lack of proper parental care or control caused the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation will cause or is likely to cause the child serious physical, mental, emotional, or moral harm.[5] On appeal, the mother challenges only the sufficiency of the evidence supporting the third factor in the test  that the cause of the deprivation is likely to continue.
"`In determining whether the conditions of deprivation are likely to continue, the juvenile court may consider the past conduct of the parent in ascertaining future conduct.'"[6] Here, the evidence shows that the mother's instability and mental health problems rendered her unable to care for her four older children, who DFCS removed from her home. She failed to consistently seek mental *530 health treatment or take her prescribed medication. And she showed no ability to maintain stable housing. She also had no bond with H.M., and she did not visit her daughter regularly or support her financially.
We recognize that at the time of the termination hearing, the mother had made some progress on her case plan. But with respect to several goals  such as securing housing, taking prescribed medication, and seeing a therapist  she demonstrated progress only after the State filed the termination petition. Moreover, despite claiming that she had obtained her own apartment, she did not have a lease at the time of the hearing, and she was still living with her aunt and spending time at a hotel. She also admitted that she only took her medication when she had it available.
These last-minute efforts to comply with her case plan goals are of questionable significance and sincerity.[7] And as we have found, "`a juvenile court may place more weight on negative past facts than promises of future conduct.'"[8] Under these circumstances, the juvenile court was authorized to conclude that the cause of H.M.'s deprivation would likely continue.[9]
2. In a related claim, the mother argues that the juvenile court lacked evidentiary support for its finding that she had been diagnosed with schizophrenia. As noted by the mother, Gothard testified that she had been diagnosed with schizoaffective disorder, not schizophrenia.
Regardless of the mother's exact diagnosis, the evidence established that she had significant mental health problems characterized by delusions and hallucinations. The evidence further showed that her condition required a regimen of treatment and medication that she did not consistently follow, resulting in a history of instability. Moreover, Gothard testified that he was unable to thoroughly evaluate the mother because she failed to follow up with his office and complete the mental health assessment.
Even if the juvenile court mislabeled the mother's diagnosis, such error likely did not affect its decision to terminate her parental rights, given the significant other evidence supporting termination. Accordingly, we find no merit in this enumerated error.[10]
3. Finally, the mother argues that the juvenile court violated her constitutional rights by not determining whether her mental health concerns impacted her ability to complete the specific goals in her case plan. According to the mother, the juvenile court was required  but failed  to inquire into her ability to complete the case plan before terminating her parental rights. She thus claims that the "termination process as applied to her, a person with a diagnosed mental disorder, violate[d] her rights to due process of law and equal protection."
The mother, however, admittedly did not raise this constitutional argument below, and thus has waived it for purposes of this appeal.[11] Moreover, the State presented evidence that despite her mental health problems, the mother understood the case plan, appreciated its requirements, and could have completed it, but did not do so. The mother offered no contrary evidence, and she testified that she was able both physically and mentally to care for H.M.
As required, the juvenile court made explicit factual findings in support of its termination decision.[12] And the clear and convincing evidence demonstrated that the mother failed to comply with her case plan for reunification, though she was able to follow and complete the plan. The mother has cited no *531 authority for her claim that termination under such circumstances raises constitutional issues.[13] And we have affirmed juvenile court orders terminating parental rights in similar cases involving individuals with mental health problems.[14] Even absent waiver, therefore, the mother's constitutional claim does not require reversal.
Judgment affirmed.
BLACKBURN, P.J., and BERNES, J., concur.
NOTES
[1] The trial court also terminated the putative father's rights to H.M., but the father is not a party to this appeal.
[2] See In the Interest of C.M., 282 Ga.App. 502, 639 S.E.2d 323 (2006).
[3] Id.
[4] See id. at 503(1), 639 S.E.2d 323.
[5] See id.
[6] Id. at 505(1)(c), 639 S.E.2d 323.
[7] See In the Interest of K.D.S., 237 Ga.App. 865, 866(1)(b), 517 S.E.2d 102 (1999).
[8] In the Interest of C.M., supra at 505-506, 639 S.E.2d 323.
[9] See id. at 506, 639 S.E.2d 323; In the Interest of A.K., 272 Ga.App. 429, 436-437(1)(c), 612 S.E.2d 581 (2005); In the Interest of K.D.S., supra at 866-867(1)(c), 517 S.E.2d 102.
[10] See In the Interest of K.D., 285 Ga.App. 673, 680(1)(d), 647 S.E.2d 360 (2007).
[11] See In the Interest of J.P.V., 261 Ga.App. 194, 196(1), 582 S.E.2d 170 (2003); Brown v. Dept. of Human Resources, 157 Ga.App. 106(1), 276 S.E.2d 155 (1981).
[12] See In the Interest of C.B., 258 Ga.App. 143, 147(2), 574 S.E.2d 339 (2002).
[13] Compare Thorne v. Padgett, 259 Ga. 650, 651-652, 386 S.E.2d 155 (1989) (declaring unconstitutional statute that permitted court to sever parental rights based merely on parent's failure to support child financially for one year, without requiring court to inquire into reason for such failure or consider whether clear and convincing evidence showed that parent was unfit).
[14] See In the Interest of B.W., 287 Ga.App. 54, ___ (5) & (6), 651 S.E.2d 332, (2007) (evidence that father failed to comply with case plan goals and failed to address his mental health problems supported termination); In the Interest of I.G., 285 Ga.App. 162, 164(a)(iii), 645 S.E.2d 649 (2007) (mother's failure to meet case plan goals, including taking medication and following up with mental health treatment, supported termination).