660 S.E.2d 868 (2008)
In the Interest of A.A. et al., children.
No. A08A0087.
Court of Appeals of Georgia.
April 8, 2008.
John R. Wiggins, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Virginia B. Fuller, Asst. Atty. Gen., Steven M. Ellis, Chickamauga, for appellee.
MIKELL, Judge.
The juvenile court terminated the parental rights of the mother and father of the minor children, born on August 29, 1999, October 7, 2000, and April 5, 2002, respectively. The father filed a motion for new trial, asserting that the Catoosa County Department of Family and Children Services (the "Department") failed to make reasonable efforts to find a relative placement for the children in accordance with OCGA § 15-11-103(a)(1). The juvenile court held a hearing, a transcript of which has not been included in the record on appeal, and found that the Department had made reasonable efforts. On appeal, the father does not challenge the termination of his parental rights. He argues only that the juvenile court abused its discretion in finding that the Department performed a "thorough" search for suitable family members. We affirm.
At the outset, we note that the father relies on a superceded version of OCGA § 15-11-103(a)(1) that included the following language: "A thorough search for a suitable family member shall be made by the court and the Department of Human Resources in attempting to effect this placement."[1] However, this requirement was deleted effective July 1, 2003, almost two years before the *869 petition for termination of parental rights was filed in this case. The Code section now reads as follows:
If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child.[2]
Accordingly, a thorough search is no longer required, and we need only determine whether the juvenile court abused its discretion in finding that the Department made reasonable efforts to secure a suitable family placement.[3] We discern no abuse of discretion in the case at bar.
The transcript of the termination hearing, which has been transmitted with the record, shows that the children were removed from the parents' custody twice during a two-year period prior to July 2004. Then, on July 6, 2004, another sibling, E.A., died in the parents' care. The father was convicted of cruelty to children in the first degree based on evidence that he smothered the child. He was sentenced to fifteen years to serve, followed by five years on probation. The mother absconded from the court's jurisdiction following the child's death, and the Department was unable to locate her. The remaining children, A.A., A.A., and A.A., were removed for the third and final time on July 7, 2004, and they have lived continuously in a single foster home since shortly thereafter.
Ashley Parker, the children's case manager, testified that the children were "doing very well" in the foster family's home and that the family was willing to adopt them. Susan Latta, a licensed marriage and family therapist, testified that she has been counseling the children since the death of their sibling and their placement in foster care. According to Latta, the children have done "remarkably well with the situation and they're very well adjusted with the foster family." Latta testified that she has been in the foster home and meets with the foster parents prior to each session with the children. When asked whether she had formed an opinion as to whether the foster home was an appropriate placement for the children, Latta testified: "I feel like they are in a fabulous home and that they should stay there." Latta believed that it would "absolutely" cause emotional harm to the children if they were removed from their foster home. She explained: "The kids are extremely adjusted to their home with the [foster parents]. They are doing well in school in Head Start, and I think to take them out of there and place them elsewhere would be extremely confusing and detrimental to each one of them as individual little people as well as a collective threesome as a sibling set."
With regard to relative placement, Parker testified that the Department had completed three home evaluations and had determined that none of the homes was suitable as longterm placement for the children. The home of the children's paternal great-grandparents had limited space and mobility; the bedrooms were used for storage and had no beds; the great-grandmother's age and health was an issue; and she told the evaluator that her primary goal was visitation with the children. The father's stepbrother and sister-in-law were rejected because they had five dogs that had not been vaccinated for rabies; the couple had no parenting experience and high debt; and they would need to switch their work schedules because they were working when the children needed to be present at home. The couple's home evaluation did not indicate whether they were willing to render their home suitable for *870 placement, and Parker testified that the Department generally gives relatives an opportunity to meet appropriate goals. The third potential relative placement was the home of the mother's brother and sister-in-law, who reside in Tennessee. Parker explained that placement of a Georgia child in another state is governed by the Interstate Compact on the Placement of Children (ICPC).[4] The Department has no control over whether the other state approves or denies a home when proceeding through the ICPC. Here, the Department's Tennessee counterpart denied the placement because it did not have a copy of the mother's birth certificate in order to verify that the applicant was, in fact, her brother. Parker testified that she was unable to obtain a copy of the mother's birth certificate because her whereabouts are unknown; the Department sent several certified letters to the mother's last known address in Florida, and those letters were returned; and confidentiality laws make it difficult for the Department to obtain a birth certificate without the mother's consent.
Based on this evidence, the juvenile court found, inter alia, that "[t]he children are in an adoptive home with a loving family and are doing very well" and that "[i]t would be in the best interest of the children for the Court to terminate parental rights so that the children could be adopted and have a permanent home." In addition, the court recognized its mandate pursuant to OCGA § 15-11-103(a)(1) "to first attempt to place the children with extended family or with a person related by blood or marriage." The court stated that a thorough search for a suitable family member had been made in attempting to effect the placement. The father challenged this finding in an amended motion for new trial. Attached to the motion are affidavits from the father's stepbrother and sister-in-law, expressing a desire to have the children placed in their home and a willingness to take any measures necessary to satisfy the Department, including giving up their dogs and switching their work schedules. The sister-in-law averred that she had called the Department 15 to 20 times prior to the termination hearing, but her calls were never returned, and she did not learn the reasons that her home was found unsuitable until the hearing.
A hearing was held on the motion for new trial on May 31, 2007. Following the hearing, the juvenile court entered an order finding that the Department performed reasonable efforts as required by law.
On appeal, the father alleges that the Department failed to follow up on placement of the children with his stepbrother and that the Department should have petitioned the juvenile court for an order to release the mother's birth certificate from the state of Florida so that the children could be placed with the mother's relatives. With regard to his stepbrother, the only evidence cited by the father are the affidavits filed after the termination hearing. With regard to the father's argument that the Department's efforts to obtain the mother's birth certificate were unreasonable, the father cites only evidence from the termination hearing. The father has failed to file a transcript of the hearing on the motion for new trial, which is essential to our consideration of these arguments. In his notice of appeal, the father designated the portions of the record to be included in the record on appeal. The transcript of the hearing on the motion for new trial was not among them.[5] In the absence of that transcript, we must assume that the juvenile court's findings with regard to the Department's actions were supported by the evidence.[6]
In any event,
OCGA § 15-11-103(a)(1) does not require a trial court to give preference to family members in making a placement of a child following termination of parental rights. Rather, the statute states that a placement shall be made "if the court determines *871 such placement is the most appropriate for and in the best interest of the child." A trial court's determination that placement with a relative is not in the best interest of the child will not be disturbed by this Court absent an abuse of discretion.[7]
Here, the therapist testified at the termination hearing that the children were extremely well adjusted in their adoptive home and that it would be "extremely confusing and detrimental" to remove them. The Department testified that the home of the father's stepbrother and sister-in law was unsuitable for various reasons. Although we laud the couple's willingness to care for these children, we are not authorized to substitute our judgment for that of the juvenile court, which "possesses a wide discretion" in determining this issue.[8] Accordingly, we cannot say, based on the transcript of the termination hearing, that the juvenile court abused its discretion in failing to place the children with the parents' family members.[9] We reach the same conclusion with regard to the mother's family members. The evidence adduced at the termination hearing authorized a finding that the Department made numerous fruitless attempts to contact the mother, and her utter lack of cooperation with the Department precluded its compliance with the ICPC.[10] We discern no abuse of discretion in this case, and the absence of a transcript of the hearing on the motion for new trial, in which this issue was raised, mandates affirmance.
Judgment affirmed.
SMITH, P.J., and ADAMS, J., concur.
NOTES
[1] Ga. L. 2003, p. 16, § 5, eff. July 1, 2003.
[2] OCGA § 15-11-103(a)(1). The trial court followed the language of the pre-2003 version of the statute in its termination order but found in the order denying the motion for new trial that the Department had "performed reasonable efforts as required by law."
[3] See, e.g., In the Interest of C.M., 282 Ga.App. 502, 508-509(5), 639 S.E.2d 323 (2006).
[4] OCGA § 39-4-4.
[5] The notice of appeal "shall set forth . . . a designation of those portions of the record to be omitted from the record on appeal." OCGA § 5-6-37.
[6] See Dept. of Human Resources v. Cowan, 220 Ga.App. 230, 232(2), 469 S.E.2d 384 (1996); In the Interest of C.C.B., 188 Ga.App. 46(3), 372 S.E.2d 6 (1988).
[7] (Citations and punctuation omitted.) In the Interest of S.V., 281 Ga.App. 331, 333(2), 636 S.E.2d 80 (2006).
[8] (Citation and punctuation omitted.) Id.
[9] See In the Interest of C.M., supra; In the Interest of A.L.S.S., 264 Ga.App. 318, 324(2), 590 S.E.2d 763 (2003).
[10] See, e.g., In the Interest of L.G., 273 Ga.App. 468, 476(3), 615 S.E.2d 551 (2005).