A09A1099. IN THE INTEREST OF C. B., a child.

(684 SE2d 401)

PHIPPS, Judge.

Jason and Michaelene Bardo, uncle and aunt to four-year-old C. B., appeal the juvenile court's order that placed the boy in the custody of the Department of Family and Children Services (DFCS) after the parental rights of Jason Bardo's brother ("the father") were terminated. The Bardos contend that the court erred in awarding custody to DFCS, rather than placing the boy in their custody pursuant to the father's purported earlier surrender to them of his parental rights to the boy. They also contend that the court erred in basing its disposition in part on ex parte communications from a guardian ad litem. Finding no merit in these contentions, we affirm.

DFCS obtained custody of C. B. in August 2006, when the boy was one year old, and placed him with a foster family. Initially, DFCS sought to reunite C. B. with his biological parents, but it later decided not to seek reunification.

The Bardos, who lived outside of Georgia, had custody of and were in the process of adopting C. B.'s three sisters. In about February 2008, C. B.'s father verbally agreed to surrender his parental rights to the boy to the Bardos, and the Bardos notified DFCS of their desire to adopt C. B. A home study was conducted, and the Bardos' home received a positive recommendation.

On April 29, 2008, DFCS petitioned for the termination of both parents' rights to C. B., and a guardian ad litem later was appointed to represent the boy's interest. On September 2, the court held a termination hearing. Earlier that day, the father signed a written surrender of his parental rights to the Bardos and a separate written acknowledgment of the surrender. Because the Bardos were not Georgia residents, they could not petition in Georgia to adopt C. B.,[1]

---

[1] See OCGA § 19-8-3 (a) (3). See generally *In re Stroh*, 240 Ga. App. 835, 842-844 (1) (c) (i), (ii) (523 SE2d 887) (1999) (discussing procedure for interstate adoption by relatives).

but on September 8, the juvenile court allowed them to intervene in the dispositional phase of the termination proceedings. On October 3, the court entered an order terminating the parental rights of both the father and the mother.

On October 6, the court conducted a dispositional hearing on C. B.'s post-termination custody. Evidence was presented on the benefits and drawbacks of C. B. being placed with the Bardos or remaining in the custody of DFCS and the care of the boy's foster family. Evidence also was presented on the potential effect upon C. B. of a transition from the foster family to the Bardos. The court subsequently entered an order of disposition that placed C. B. in the custody of DFCS, pursuant to OCGA § 15-11-103 (a) (2).

1. The guardian ad litem argues that this appeal should be dismissed because it was brought as a direct rather than a discretionary appeal. OCGA § 5-6-35 (a) (12) requires that appeals from orders terminating parental rights be taken pursuant to discretionary application. The Bardos, however, do not appeal from the order terminating the father's parental rights, nor do they challenge the court's termination decision. Instead, they appeal from the subsequent dispositional order placing C. B. in DFCS's custody. The Bardos may directly appeal from this order.[2]

2. The Bardos assert that the juvenile court erred in placing C. B. in DFCS's custody, rather than in their custody, in light of the father's surrender of parental rights to them and Georgia's policy of encouraging relative placement.

(a) The Bardos challenge the court's holding, in its dispositional order, that the father's surrender of parental rights to the Bardos was invalid. But we need not determine whether the court erred in its determination about the surrender's validity, because even a valid surrender would not have required the court to give the Bardos custody of C. B. A parent's surrender of rights to a child to relatives pursuant to OCGA § 19-8-7 (a) does not require the placement of the child with those relatives.[3] Notwithstanding a valid surrender, a court may find placement with and adoption by the relatives not to be in the child's best interest.[4]

(b) The Bardos contend that the court did not follow the requirements of OCGA § 15-11-103 when it placed C. B. in DFCS's custody. OCGA § 15-11-103 (a) (1) provides:

If, upon the entering of an order terminating the parental

---

[2] See OCGA § 5-6-34 (a) (1).

[3] See *Madison v. Barnett*, 268 Ga. App. 348, 350 (1) (601 SE2d 704) (2004).

[4] See id.

> rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child.

"Although the statutory framework encourages relative placement, it is not an absolute requirement."[5] Thus, a trial court is not required to give preference to family members in making a placement of a child following termination of parental rights.[6] Instead, the court must place the child with the person or persons it determines to be the most appropriate and in the child's best interest.[7]

Although the juvenile court acknowledged the ability of the Bardos to meet C. B.'s needs, the court could not find that it would be in the boy's best interest to give the Bardos immediate custody of him. The court based this conclusion on the emotional impact that the court found an abrupt transition away from his foster family would have upon the boy. The court opined that an eventual adoption by the Bardos might be in the boy's future best interest, but found that the child's present best interest was served by remaining in DFCS custody and having DFCS assess "whether or not [the disruption of C. B.'s bond with his foster parents] should outweigh the benefits the child would receive by being placed with the [Bardos]." The court further noted that, pursuant to OCGA § 15-11-103 (e), it would "monitor and review this matter as appropriate to help ensure that an adoption in the setting that will be in the child's continuing best interest[ ] is secured in an expeditious manner."

Absent an abuse of discretion, we will not disturb a trial court's determination, following a termination order, that placement with a relative is not in the best interest of a child.[8] A child's established bond with a foster family can authorize a juvenile court finding that the child's best interest is served by remaining with the foster family over being placed with a relative.[9] And evidence presented at the

---

[5] *In the Interest of R. D. B.*, 289 Ga. App. 76, 81 (2) (656 SE2d 203) (2007) (citations omitted).

[6] *In the Interest of A. A.*, 290 Ga. App. 818, 822 (660 SE2d 868) (2008).

[7] *In the Interest of A. G.*, 293 Ga. App. 493, 498 (4) (667 SE2d 662) (2008).

[8] *In the Interest of J. B. C.*, 269 Ga. App. 529, 530 (604 SE2d 606) (2004).

[9] See *In the Interest of S. V.*, 281 Ga. App. 331, 333 (2) (636 SE2d 80) (2006).

disposition hearing supported the court's finding that C. B. had a strong bond with his foster family that would be disrupted by a placement with the Bardos, to the boy's emotional detriment. The juvenile court did not abuse its discretion in its determination of C. B.'s best interest.

3. The Bardos contend that, in reaching its disposition concerning custody, the juvenile court erred in considering e-mail communications from the guardian ad litem that the Bardos assert were ex parte. "[J]udges must scrupulously avoid ex parte communications whether or not they consider them."[10] But the Bardos' counsel acknowledged to the court that he received copies of the communications. We find no error.[11]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 1, 2009.

*Larry A. Ballew*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Rochelle A. Doyle, Assistant Attorneys General, Randall A. Meincke*, for appellee.

---

[10] *Ivey v. Ivey*, 264 Ga. 435, 438 (3) (445 SE2d 258) (1994).

[11] See *Cagle v. Davis*, 236 Ga. App. 657, 661 (4) (a) (513 SE2d 16) (1999) (finding no error where counsel had notice of allegedly ex parte communications).