**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.***

**January 11, 2022**

# In the Court of Appeals of Georgia

A21A1751. IN THE INTEREST OF BABY GIRL N., a child.

DOYLE, Presiding Judge.

Following the grant of their discretionary application, Conzie Williams-Waller and Michael Waller, the maternal grandmother and maternal step-grandfather of Baby Girl N. ("the child"), appeal from a juvenile court order denying their request for permanent custody and awarding permanent custody to Torrie and Chauncey Jackson, the child's foster parents, for purposes of adoption. The grandparents argue that the juvenile court erred by (1) permitting the foster parents to intervene in this action, and (2) applying OCGA § 15-11-321 (a) as amended on July 1, 2019. For the reasons that follow, we affirm.

The facts in this case are undisputed.[1] Shortly after the child was born in December 2018, her biological mother surrendered her parental rights to the child to the Georgia Department of Human Services ("the Department") under the Safe Haven law,[2] indicating that she was unable to care for the child, wanted to give her up for adoption, did not want any involvement with her going forward, and wished to remain anonymous.[3] Shortly thereafter, the Department placed the child with the Jacksons and on March 13, 2019, filed a dependency petition in Newton County Juvenile Court. On July 15, 2019, the child was adjudicated dependent, and on September 13, 2019, the juvenile court entered a final disposition, placing her in the custody of the Department.

On October 16, 2019, the foster parents moved to intervene pursuant to OCGA § 9-11-24 (a) and (b). On October 17, 2019, the Department filed a termination

---

[1] Neither the Department of Human Services ("the Department") nor the foster parents filed an appellate brief in this case.

[2] OCGA § 19-10A-1 et seq.

[3] The mother identified two potential fathers; a paternity test ruled out one, and the other could not be located.

2

petition. On October 31, 2019, the grandmother moved to intervene, seeking custody.[4]

On November 18, 2019, the Department filed a reply brief to the foster parents' intervention motion, arguing that they were not allowed to intervene either as of right or via a permissive intervention. On November 19, 2019, both grandparents filed a motion to intervene in the case.

The Department filed a notice of change of placement from the foster parents to the grandparents, and on December 16, 2019, the Guardian Ad Litem ("GAL") previously appointed in the case filed an objection to the notice of change of placement. On January 21, 2020, the juvenile court entered an order granting the foster parents' motion to intervene pursuant to OCGA § 9-11-24 (b), granting the grandmother's motion to intervene, and ordering that the child should remain in her placement with the foster parents. On January 28, 2020, the juvenile court entered an order terminating parental rights with regard to the child. On October 21, 2020, the grandparents moved for custody for purposes of adoption.

---

[4] According to the grandmother, she had been unaware of the mother's pregnancy or the child's birth until shortly before filing the motion when the Department located her as a potential relative placement. Though not at issue on appeal, we note the incongruity of the protections and anonymity offered by the Safe Haven law and the requirement that the Department attempt to locate and inform relatives of the child as potential custodians.

At the final hearing, the foster parents, the grandparents, and psychologists testified.[5] Thereafter, the juvenile court entered a detailed order transferring permanent custody of the child to the foster parents for purposes of adoption. **add details**

1. The grandparents argue that the juvenile court erred by granting the foster parents' motion to intervene. We disagree.

The juvenile court granted the foster parents' motion to intervene pursuant to OCGA § 9-11-24 (b).[6]

> Under the permissive intervention provisions of OCGA § 9-11-24 (b) (2), anyone upon timely application may be permitted to intervene in an action "[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." When the court exercises its discretion as to permissive intervention, [Code] section 9-11-24 (b) further provides that "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[7]

---

[5] The GAL and counsel for the Department participated in the final hearing.

[6] The grandparents did not object to the foster parents' motion to intervene, but they were not yet parties at that point. The juvenile court granted the grandparents' motion to intervene under OCGA § 19-7-3.

[7] *Buckler v. DeKalb County*, 290 Ga. App. 190, 193 (2) (659 SE2d 398) (2008).

4

"Whether permissive intervention is granted is addressed to the sound discretion of the trial judge, and a decision on this issue will not be reversed unless there is an abuse of discretion."[8]

Here, we find no abuse of discretion in the juvenile court's order granting the permissive intervention of the foster parents. Although the child was in the custody of the Department, she had been in the temporary custody of the foster parents since birth, and their claims and the custody portion of the termination action have a question of law in common – the best interest of the child.[9] Accordingly, this enumeration is without merit.

2. The grandparents contend that the juvenile court erred by retroactively applying OCGA § 15-11-321 (a) as amended on July 1, 2019, to this case, which was filed in March 2019. We find no basis for reversal.

Prior to the amendment, OCGA § 15-11-321 (a) provided:

_____

[8] (Punctuation omitted.) *Henry County School Dist. v. Home Depot, U. S. A., Inc.*, 348 Ga. App. 723, 725 (824 SE2d 622) (2019), quoting *Sloan v. Southern Floridabanc Fed. Sav. & Loan Assn.*, 197 Ga. App. 601, 603 (2) (398 SE2d 720) (1990). See *In the Interest of J. C. W.*, 318 Ga. App. 772 , 782 (3) (734 SE2d 781) (2012).

[9] See, e.g., *In the Interest of R. D. B.*, 289 Ga. App. 76, 77 (1), 80-81 (2) (656 SE2d 203) (2007) (affirming termination of mother's parental rights and granting permanent custody to the foster parents, who were permitted to intervene).

When a court enters an order terminating the parental rights of a parent or accepts a parent's voluntary surrender of parental rights, or a petition for termination of parental rights is withdrawn because a parent has executed an act of surrender in favor of the [D]epartment, a placement may be made only if the court finds that such placement is in the best interests of the child and in accordance with such child's court approved permanency plan created pursuant to Code Sections 15-11-231 and 15-11-232. In determining which placement is in a child's best interests, the court shall initially attempt to place the child with an adult who is a relative or fictive kin, if such individual is willing and found by the court to be qualified to receive and care for such child. In determining which placement is in a child's best interests, the court shall enter findings of fact reflecting its consideration of the following:

(1) Such child's need for a placement that offers the greatest degree of legal permanence and security;

(2) The least disruptive placement for such child;

(3) Such child's sense of attachment and need for continuity of relationships;

(4) The value of biological and familial connections; and

(5) Any other factors the court deems relevant to its determination.

The 2019 amendment, effective July 1, 2019, deleted the former second sentence of subsection (a), which read: "In determining which placement is in a child's best interests, the court shall initially attempt to place the child with an adult who is a relative or fictive kin, if such individual is willing and found by the court to be qualified to receive and care for such child."[10]

Here, the juvenile court specifically recognized the amendment, but aptly noted that although former OCGA § 15-11-103 (a) (1), now codified at OCGA § 15-11-321,

> encourages relative placement, it is not an absolute requirement. Thus, a trial court is not required to give preference to family members in making a placement of a child following termination of parental rights. Instead, the court must place the child with the person or persons it determines to be the most appropriate and in the child's best interest.[11]

---

[10] See Ga. L. 2019, p. 456, Section 4/SB 167.

[11] (Footnotes and punctuation omitted.) *In the Interest of C. B.*, 300 Ga. App. 278, 280 (2) (b) (684 SE2d 401) (2000), quoting *In the Interest of R. D. B.*, 289 Ga. App. at 80-81 (2), and citing *In the Interest of A. G.*, 293 Ga. App. 493, 498 (4) (667 SE2d 662) (2008); *In the Interest of A. A.*, 290 Ga. App. 818, 822 (660 SE2d 868) (2008).

The juvenile court properly applied that standard, considering the factors set forth in OCGA § 15-11-321 (a) as applicable to this case.[12] Therefore, this enumeration is without merit.

*Judgment affirmed. Reese and Brown, JJ., concur.*

---

[12] The grandparents do not argue that the juvenile court erred by finding that permanent custody with the foster parents for purposes of adoption was in the child's best interest.