A04A0875. IN THE INTEREST OF K. J., a child.
(602 SE2d 861)

SMITH, Chief Judge.

The mother of K. J. appeals from the denial of her motion for new trial after the Juvenile Court of Henry County found the child deprived and transferred custody of K. J. to his father, a North Carolina resident. She contends the evidence was insufficient to support a finding of deprivation. She also asserts error in the trial court's failure to include a retransfer provision in its order, to make efforts toward reunification, to make findings of fact sufficient to support its finding of deprivation, or to hold a hearing on her motion for new trial. We find no error and affirm.

The record shows that the Department of Children and Family Services (DFACS) received a complaint on May 29, 2003, that in February 2003 the mother had beaten K. J. with an extension cord so severely that it left permanent scars on his body. The mother admitted she had whipped seven-year-old K. J. "on his back, shoulders, buttocks, legs, and arms" and that some of the injuries left scars. She explained that the child had set a small fire outside, and she had picked up the extension cord and began whipping him. She said K. J. had lied to her when she questioned him about the fire, and during the whipping, he "turned around and hit her." When K. J. began hitting her, the mother "lost it" and beat him severely. The mother was arrested and charged with first degree cruelty to children, and the child was taken into custody by DFACS. An initial hearing was held within 72 hours, at which the mother stipulated the child's deprivation.

DFACS filed a deprivation petition, and at the adjudication/disposition hearing on the petition, the juvenile court heard three witnesses: a DFACS caseworker, K. J.'s father, and the mother. The mother testified that nothing like the February beating had ever happened before. The caseworker confirmed this, testifying that K. J. had indicated to her that the beating was a solitary incident, and that nothing like it had ever happened before. She also testified that K. J. and his mother were in counseling together and that the therapist had informed her that "the mom was making progress and was very cooperative." The mother testified that she had also completed parenting classes with Families First.

All witnesses agreed that the mother had recognized that the child should be removed temporarily from her home after the beating and that, after a brief stay with his maternal grandmother, K. J. had gone to live with his father in North Carolina. K. J. lived with his father until May 27, 2003. When the mother was served with a modification of custody petition the father filed in North Carolina, she traveled there, picked up the child from school, and returned with him to Georgia. The father admitted that he did not report the February beating until after the mother had taken K. J. back to Georgia.

The juvenile court found K. J. to be deprived. The court placed custody in the father and authorized the father to take K. J. to North Carolina. The court also directed DFACS to transfer the case to the appropriate agency in the father's county of residence in North Carolina. The mother filed a motion for new trial, which was denied. This appeal ensued.

1. In two enumerations, the mother contends the trial court erred in finding that clear and convincing evidence existed of deprivation and in failing to make specific findings of fact sufficient to support the finding of deprivation. We do not agree with either contention.

(a) First, the mother stipulated at the 72-hour hearing that K. J. was deprived, and the stipulation was included in the order entered after that hearing. Second, relying upon *In the Interest of C. D. E.*, 248 Ga. App. 756 (546 SE2d 837) (2001), the mother argues that no showing was made of *present* deprivation, because the beating was an isolated incident that occurred approximately five months prior to the hearing. But *C. D. E.* does not support the mother's argument. It is true that we stated in *C. D. E.* that "[a]n order temporarily transferring custody of a child based on . . . alleged deprivation must be grounded upon a finding that the child is at the present time a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation." (Citations, punctuation, footnotes and emphasis omitted.) Id. at 761. In *C. D. E.*, however, not even an "isolated incident" existed. Instead, we found that "there was absolutely no evidence presented that [the mother] was anything other than a fit parent for her children." The children had been removed from the home because of domestic violence, in which the father had beaten the mother repeatedly. Id. at 757. A social worker testified that she had "no concerns" about the mother's ability to parent. Id. at 759.

Here, in contrast, it was the mother who abused K. J., and that incident was so severe that it raised reasonable concerns about her parenting ability. Although the mother had made progress and was allowed to visit with K. J., the trial court apparently shared the caseworker's concern that the mother was not yet ready to take K. J.

back and parent him properly. The juvenile court properly based its ruling on concern for K. J. It is well established that deprivation "focuses upon the needs of the child regardless of parental fault." (Citation, punctuation and emphasis omitted.) *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997). The evidence presented was sufficient to support the juvenile court's finding of deprivation.

(b) The mother also correctly points out that findings of fact are mandatory under OCGA § 9-11-52 (a). *In the Interest of A. A. G.*, 143 Ga. App. 648 (1) (239 SE2d 697) (1977). She maintains that the juvenile court entered its order after the hearing on adjudication and disposition without making explicit findings supporting its conclusion that K. J. was deprived. But here, the order shows that the court explicitly based its finding of deprivation on physical abuse. Although this fact was not included as a formal "finding of fact," the trial court's reasoning leading to the conclusion of deprivation was clearly laid out. The order recites that "[t]he reason(s) the child cannot be adequately and safely protected at home is the mother's physical abuse of the child. Therefore, continuation in the home would be contrary to the welfare of the child and removal of the child from the home is in the best interest of the child."

2. The mother asserts that the juvenile court failed to include a provision in the dispositional portion of its order transferring physical custody back to the mother either in its discretion or upon the occurrence of specified events, as required by OCGA § 15-11-55 (a) (2). We do not agree.

OCGA § 15-11-55 governs disposition of a deprived child. Under subsection (a), the juvenile court may make any one of several permitted dispositions. Subsection (a) (2) includes a provision requiring "retransfer." Although the order in issue would be authorized under subsection (a) (2), it could also be authorized under subsection (a) (1), which includes no such requirement. Under subsection (a) (1), if a child is found to be deprived the juvenile court may "[p]ermit the child to remain with his or her parents, guardian, or other custodian, including a putative father, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child." The juvenile court's order was proper under subsection (a) (1), because the child remained in the custody of the father, with whom he had been living since February, until the mother brought him back to Georgia shortly before the hearing.

3. The mother concedes that the juvenile court's order recites the court's conclusion that DFACS "made reasonable efforts to preserve and reunify the family prior to the placement of the child in foster care, to prevent or eliminate the need for removal of the child from the

home and to make it possible for the child to return home." Nevertheless, she complains that the juvenile court failed to comply with OCGA § 15-11-58, which requires efforts to reunify the legal custodian with the child.

But even assuming the mother is correct, the juvenile court was not required to comply with those statutory provisions. OCGA § 15-11-58 (a) provides explicitly that the court must determine whether reasonable efforts were made to preserve and reunify the family "[i]f the court places custody of the child in the Division of Family and Children Services of the Department of Human Resources." Here, the juvenile court did not place custody of K. J. with DFACS, but with his father. As discussed previously, K. J.'s placement was in his father's home, where he had resided for several months before the hearing with the mother's consent. Both parents had legal custody of the child. Because the juvenile court did not place custody in DFACS, the requirements of OCGA § 15-11-58 did not apply. *In the Interest of J. W. K.*, 276 Ga. 314, 317, n. 5 (578 SE2d 396) (2003).

4. The mother asserts finally that the juvenile court erred in denying her motion for new trial "without conducting a hearing." She argues that the juvenile court denied the motion without considering objections to the motion by DFACS. We do not agree.

The mother's contention that her motion was denied "without conducting a hearing" is belied by the record, which includes a transcript of the hearing. At that hearing, counsel for DFACS objected to the motion on the ground that no provision exists for such motions on orders regarding adjudication and disposition of a child alleged to be deprived, as well as on the ground of untimeliness. It is obvious that the trial court overruled those objections and ruled on the motion for new trial. Moreover, the juvenile court specifically permitted counsel for the mother to respond to DFACS's objections before ruling on the motion.

The mother also argues that the juvenile court failed to follow requirements in OCGA § 15-11-87 regarding a deprived child who "is about to become a resident of another state." The mother has not enumerated this as error, and she may not now enlarge her enumeration to address this point. *Manning v. State*, 237 Ga. App. 520, 523 (515 SE2d 663) (1999).

Even if we considered this argument it would be unavailing. We believe that OCGA § 15-11-87 does not bar the transfer of custody of a child to one of his parents who resides in another state notwithstanding that neither a formal request to transfer nor an acceptance of the transfer has occurred. A fair reading of the statute shows that it addresses the transfer of an ongoing juvenile court case, including delinquency and deprivation, and not the transfer of custody to a child's parent. We find no error.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 30, 2004.

*Sonya Chachere-Compton,* for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Edythe S. Whitaker,* for appellee.