A07A1612. IN THE INTEREST OF D. H. D., a child.

(656 SE2d 183)

MIKELL, Judge.

The mother and father of D. H. D., born December 19, 2006, appeal the Juvenile Court of Murray County's order of January 22, 2007, finding D. H. D. deprived and awarding temporary custody to the Murray County Department of Family and Children Services ("DFCS"). They contend that there was insufficient evidence supporting the trial court's deprivation finding. For the reasons set forth below, we affirm.

"On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the [child was] deprived."[1] We neither weigh evidence nor determine the credibility of witnesses.[2] So viewed, the evidence adduced at the deprivation hearing showed that Hammad El-Ameen, a DFCS caseworker, received a referral on December 19, 2006, informing him that the mother was about to have a C-section at Hamilton Medical Center and that DFCS should assume custody of the child because of appellants' history. El-Ameen explained that DFCS became involved with appellants in 2005, when D. H. D.'s sister M. D. was taken into custody.[3] According to El-Ameen, DFCS received a referral that the mother "had been out in the yard just in a towel screaming profanity

---

[1] (Punctuation and footnote omitted.) *In the Interest of N. D.*, 286 Ga. App. 236 (648 SE2d 771) (2007).

[2] Id.

[3] We affirmed the termination of appellants' rights to M. D. in *In the Interest of M. D.*, 283 Ga. App. 805 (642 SE2d 863) (2007), finding that appellant-mother herself presented "the most

she didn't know where [M. D.] was at that time and just acting strange." The mother was hallucinating and "talking to a spirit" with whom she "f[ou]ght." El-Ameen heard the mother "talking to something that wasn't there and saying she could overcome this beast." She acknowledged that the "spirit" possibly could tell her to harm her child. Thus, El-Ameen was concerned about the mother's ability to care for D. H. D. because she was "once again not on medication," had not completed her case plan, and M. D. continued to be in DFCS custody. The mother had four other children in DFCS care and she acknowledged that her rights to those children had been terminated. El-Ameen further reported that the father, whom he met in 2004 and 2005, acknowledged suffering from "severe depression." El-Ameen acknowledged that he was unaware of any physical mistreatment of M. D. or D. H. D. by appellants, but based on his observations of the mother on the day M. D. was placed in custody, El-Ameen did not "think she could physically be capable of taking care of [D. H. D.]."

The father testified that he was the father of both children; that he had received $685 per month in disability benefits for three years due to his depression; that he had six other minor children who "receive[d] off of [his] social security" and lived with their mother, Melissa Johnson; and that he had two adult children by a third woman. Appellants had been married for two years, and the father acknowledged that his social security benefits and food stamps were their only source of income. He paid $325 for their rent and approximately $46 for car insurance. The father explained that he took medication to treat his depression, but that he had not been diagnosed with schizophrenia. He denied that his wife was schizophrenic or that she "ever [saw or heard] things that [were not] there," but admitted that he met her while they were "in a treatment facility." He further testified that the mother had taken Prozac at one time, but had not returned to the doctor for a refill.

The mother testified that she was 26 years old. She acknowledged that she had four other children and that her parental rights to those children had been terminated. She explained that her mental-health issues began in her early twenties when she began hearing "things that other people couldn't hear"; however, she ignored the problem even though it "was the worst thing to do." She testified that she had never been diagnosed with a mental illness; that her doctor told her she was schizoaffective, which means that she has "symptoms of schizophrenia"; that she last took Prozac, Risperdal, and

telling evidence of parental unfitness" when she acknowledged that she was diagnosed with schizoaffective disorder and testified that she thought she could "beat" her condition without medication. Id. at 806-807.

Trazodone when she was in her sixth month of pregnancy with D. H. D.; and that she admitted herself to Rome Regional Hospital because she "felt like [she] needed help with depression and with trying to control the brain disorder." She denied that she was hearing voices, but she was "having delusions . . . and [it was] hard to tell reality from not reality sometimes." She stopped taking her medication because "it was too hard to get . . . [t]oo much going through organizations to get it."

The mother thought she was capable of working, and wanted to "find a good job." She confirmed that she had worked briefly at Hardee's and Kentucky Fried Chicken, and that she also worked at Sonic for "a couple of hours . . . but that didn't work out."

Appellants received case plans, which required them to maintain a stable home and income for six months, complete parenting classes, obtain psychological evaluations, and address their mental health issues. The father testified that they had completed parenting classes, and that he had obtained a psychological evaluation. As for the remaining requirements, the father confirmed that he had not worked because of his disability; that appellants had moved once since D. H. D. was born; that the mother worked briefly; and that the mother had not completed her psychological evaluation.

In its temporary placement order, the juvenile court found that D. H. D. was deprived and in need of the protection of the court, and that allowing D. H. D. to remain in the home would be contrary to the child's welfare. The court granted DFCS custody of the child for a period not to exceed 12 months from the date the child was first placed into custody.

In their sole enumeration of error, appellants contend that the court's deprivation finding was not supported by clear and convincing evidence. In support of this claim, appellants point out that there was no evidence of abuse or neglect, or of present mental impairment. We disagree.

Under Georgia law, a deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[4] This definition focuses on the needs of the child regardless of parental fault.[5] "[I]t is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue."[6] "[A]n order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding

---

[4] OCGA § 15-11-2 (8) (A).

[5] *In the Interest of N. D.*, supra at 239 (1).

[6] (Citation and punctuation omitted.) *In the Interest of M. D.*, supra at 806.

that the child is at the present time a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation."[7] Parental unfitness caused either by intentional or unintentional misconduct resulting in abuse or neglect of children, or by what is tantamount to physical or mental incapability to care for the children must be established.[8]

Here, as in *In the Interest of M. D.*,[9] we find clear and convincing evidence that the child was without proper parental care and control and therefore deprived within the meaning of OCGA § 15-11-2 (8) (A). The mother acknowledged that she suffered from schizoaffective disorder, that she ignored her condition, and that she no longer took her medication. The evidence further showed that the mother's condition was characterized by delusions and hallucinations, which she admitted to El-Ameen could cause her to harm her children, yet nothing indicated that she had addressed her serious problem. Moreover, though the father denied his wife's problems, he testified in *In the Interest of M. D.* that he was aware that she was having delusions, but nonetheless left M. D. in the mother's care.[10] Admittedly, the circumstances that supported the termination of these parents' rights to M. D. occurred 16 months before the deprivation hearing in this case. However, the evidence shows that the mother continues to do nothing to control and/or treat her condition and that the father denies his wife has a problem, including doing little to nothing to encourage her to seek much-needed treatment. We need not wait until D. H. D. suffers harm before finding her to be deprived.[11]

Lastly, this case is distinguished from *In the Interest of K. S.*,[12] cited by appellants. In that case, we reversed the juvenile court's deprivation finding because, even though the mother admitted that she had been treated for depression in the past, there was no reliable or competent evidence of the mother's present mental impairment.[13] In this case, the mother herself admitted that she suffers from present mental impairment, including schizoaffective disorder and

---

[7] (Citation and punctuation omitted.) *In the Interest of K. J.*, 268 Ga. App. 843, 844 (1) (a) (602 SE2d 861) (2004).

[8] *In the Interest of U. B.*, 246 Ga. App. 328 (1) (540 SE2d 278) (2000).

[9] Supra.

[10] Id. at 807. In that case, appellant-mother "conceded that while she was actively delusional, she left [M. D.] alone in the house to go outside and fight off spirits that she believed were going to take over her life and body." Id. at 808 (Ruffin, J., concurring specially).

[11] See, e.g., *In the Interest of A. R.*, 287 Ga. App. 334, 336 (651 SE2d 467) (2007) ("[a] juvenile court is under no obligation to return the children to the mother until they suffer further harm in order to obtain current evidence of deprivation or neglect") (citations omitted).

[12] 271 Ga. App. 891 (611 SE2d 150) (2005).

[13] Id. at 893.

delusional thoughts.[14] Given the circumstances of this case, the juvenile court properly found D. H. D. to be deprived.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 17, 2007.

*Rodney Q. Quarles*, for appellants.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Cynthia N. Johnson*, for appellee.

---

[14] See, e.g., *In the Interest of H. M.*, 287 Ga. App. 418, 419-420 (1) (651 SE2d 527) (2007) (affirming termination of parental rights where the evidence showed, among other things, that mother had mental health problems and failed to consistently seek mental health treatment or take her prescribed medication); *In the Interest of D. P.*, 287 Ga. App. 168, 172 (1) (b) (651 SE2d 110) (2007) (affirming termination of parental rights where mother's own testimony established that she suffered from mental health deficiency which rendered her incapable of caring for her child).