708 S.E.2d 655 (2011)
In the Interest of C.A.S., a child.
No. A11A0280.
Court of Appeals of Georgia.
March 24, 2011.
*657 Avrett, Ponder & Withrock, William Bartlett Barnwell, for appellant.
Bruce A. Kling, Dalton, Penny Hannah, Asst. Atty. Gen., Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., for appellee.
McFADDEN, Judge.
The mother of five-year-old C.A.S. appeals the termination of her parental rights. Because the juvenile court's decision is supported by clear and convincing evidence, we affirm the termination.
OCGA § 15-11-94 sets forth the procedure for termination of parental rights, which involves two steps. First, the juvenile court must find
parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
(Footnote omitted.) In the Interest of J.R.N., 291 Ga.App. 521, 525(2), 662 S.E.2d 300 (2008). We view the evidence in the light most favorable to the juvenile court's ruling to determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. In the Interest of T.J.J., 258 Ga.App. 312, 314, 574 S.E.2d 387 (2002).
So viewed, the record shows that C.A.S. was born in September 2005 and removed from his mother's custody in September 2007 due to her use of methamphetamine and her lack of stable housing and employment. CAS.'s father has never legitimated him. C.A.S. was adjudicated to be deprived in an order that neither parent appealed.
C.A.S. was placed in the custody of his maternal grandmother, but he was removed from her custody in 2009 because she repeatedly violated safety plans by allowing C.A.S.'s mother to live in the house. She also allowed drug activity to occur on her property. In June 2009, C.A.S. was again adjudicated to be deprived and this time placed in the custody of the Department of Family and Children Services ("DFCS"). He is now in a foster home, along with two cousins, and is doing well. His foster parents intend to adopt all three children.
In August 2009, the juvenile court adopted a case plan that imposed certain goals the mother had to meet to regain custody. The court required the mother to obtain and maintain stable housing and sufficient income for six months; to pay child support; to visit *658 C.A.S.; to complete a parenting class; to complete a drug and alcohol assessment and to follow through with recommended treatment; to have six months of negative random drug screens; and to undergo a psychological evaluation and to follow through with recommended treatment. The court also required the mother to provide written proof of completion of the goals to her case manager. She submitted to her caseworker evidence that she made three child support payments and completed a parenting class; she submitted no other evidence of her progress toward completing the requirements of her case plan.
At the termination hearing, the mother presented the testimony of her counselor from the substance abuse program in which she was enrolled, and she herself testified. On February 1, 2010, the mother began her treatment in the program, where she was subject to random drug screens. Each time she was tested, she tested negative. She completed parenting classes and an anger management course. She also started a trauma recovery class, an emotional management class, and addiction education. In spite of the juvenile court's requirement that she do so, the mother testified that she did not inform her case manager of her progress in her treatment programor her progress in satisfying the goals in her case planbecause the case manager was hostile toward her. Although the mother was able to work while undergoing drug treatment, she testified that she quit her job to enter the program and was not able to find another job that would accommodate her schedule better. She quit her job in October 2009, four months before she entered treatment.
The juvenile court found that the mother had completed some, but not all, of the steps required by her case plan. She had completed a parenting class and had moved into her own apartment. However, she did not enter the drug treatment program until years after her child had been removed from her custody because of her drug use. Although she had submitted to the psychological evaluation required by the plan, she did not complete the recommended treatment.
The court also observed that the mother was arrested and incarcerated in January 2010, for a probation violation after she failed to report for probation for ten months. She remained unemployed at the time of the hearing. The juvenile court found the mother could have worked while completing treatment. And even though she could have paid more while employed, she paid only $250 in child support the entire time C.A.S. was out of her care. In sum, the juvenile court found that although the mother had begun addressing her case plan goals, she had had more than sufficient time to complete them before the hearing but had not done so.
Based on its findings, the juvenile court concluded that C.A.S. was deprived because his mother could not care for him; that his deprivation was likely to continue and to harm him; and that termination of the mother's parental rights was in his best interests.
1. The mother contends that the juvenile court should not have terminated her parental rights for failing to pay child support because of the difficulties she had in obtaining employment. Yet the mother testified that for almost a year she was employed in a job where she earned at least $1,700 per month. And she does not dispute that she paid a total of only $250 in child support for C.A.S. A parent's failure to pay child support is compelling evidence that she is not an able parent. In the Interest of T.B., 267 Ga.App. 484, 486-487(1), 600 S.E.2d 432 (2004). The juvenile court was authorized to find that the mother "wantonly and willfully failed to comply," for at least a year, with a court order to pay child support, which is a ground for termination under OCGA § 15-11-94(b)(2).
2. The mother argues that termination was premature because she was not granted the one-year period required by OCGA § 15-11-94(b)(4)(C)(iii) to complete her case plan goals. That statute provides that,
[i]n addition to the considerations in subparagraph (B) of this paragraph, where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without *659 proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights . . . [t]o comply with a court ordered plan designed to reunite the child with the parent or parents. . . .
The mother observes that the case plan order was entered August 3, 2009, yet the petition to terminate her parental rights was filed less than a year later, on March 26, 2010. The August 3, 2009 order, however, was a supplemental order; at least since March 2008, shortly after the child was first removed from the mother's custody, the juvenile court had established goals for her to meet to regain custody, including maintaining stable employment and paying child support. Therefore, the trial court's finding that the mother failed, for more than two years, to comply with court-ordered goals is accurate.
Further, "even if the reunification plan has been in effect for less than one year, a termination of parental rights may be warranted by other factors." In the Interest of R.S., 270 Ga.App. 810, 813(2), 608 S.E.2d 286 (2004). Those factors include, but are not limited to, whether the parent failed to care for and support the child, OCGA § 15-11-94(b)(4)(C)(ii), and whether the child is without proper parental care and control because of the physical, mental, or emotional neglect of the child. See OCGA § 15-11-94(b)(4)(B)(v). The evidence of the mother's belated entry into a drug treatment program, her failure to complete psychological treatment, her failure to support the child, and her incarceration for a probation violation supports the juvenile court's conclusion that the lack of proper parental care or control caused C.A.S.'s deprivation. OCGA § 15-11-94(b)(4)(B)(v), (C)(ii).
3. The mother argues that the evidence did not show that C.A.S. is currently deprived, given her recent progress in addressing her case plan goals. She cites In the Interest of K.M., 240 Ga.App. 677, 523 S.E.2d 640 (1999), in which we reversed an order terminating the parental rights of a mother who had made significant, recent progress in turning her life around. "Despite the mother's past conduct," we wrote, "there is not clear and convincing evidence of present unfitness." Id. at 680, 523 S.E.2d 640. We also observed that the evidence clearly showed that termination was not in the ten-year-old child's best interest because of her strong attachment to her mother. Id.
Here, on the other hand, as recently as January 2010, the mother was arrested for a probation violation for which she gave no plausible explanation. Although C.A.S. was removed from her custody in September 2007 because of her drug use, she did not begin treatment until February 2010. At the time of the termination hearing, she still was unemployed, having quit her job to enter the treatment program, even though she could complete treatment while working.
Clear and convincing evidence supports the juvenile court's conclusion that C.A.S. is presently deprived. Consequently, "what weight to give recent improvements is a question for the trier of fact. In considering a parent's claims of recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Punctuation and footnotes omitted.) In the Interest of A.T.H., 248 Ga.App. 570, 573(1), 547 S.E.2d 299 (2001).
4. The mother argues that the evidence does not show that the deprivation is likely to continue.
While the record does show the [mother's] efforts to comply with some aspects of the case plan, what weight to give that evidence was a question for the trier of fact. Likewise, judging the credibility of [her] good intentions was a task for the juvenile court. Moreover, the juvenile court was authorized to consider the [mother's] past conduct in determining whether the causes of deprivation were likely to continue. And the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.
(Footnotes omitted.) In the Interest of D.B., 306 Ga.App. 129, 137(1), 701 S.E.2d 588 (2010).
*660 Given the mother's failure to complete her case plan, her limited financial support of her child, her delay in obtaining drug treatment, and her January 2010 incarceration, the juvenile court was authorized to conclude that the deprivation is likely to continue, despite her belated efforts to comply with certain case plan requirements. See In the Interest of M.C., 287 Ga.App. 766, 769(1)(c), 653 S.E.2d 120 (2007).
5. The mother argues that the evidence does not show that termination is in C.A.S.'s best interest. "In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse. . . ." (Footnote omitted.) In the Interest of B.W., 287 Ga.App. 54, 64(3), 651 S.E.2d 332 (2007). And "the same factors that show parental misconduct and inability support a finding that termination of parental rights is in the child's best interest." Id.
Based on the evidence of the mother's instability, her failure to support her child, and the foster parents' desire to adopt C.A.S. and his cousins, the juvenile court did not manifestly abuse its discretion in concluding that termination is in the best interests of C.A.S. See In the Interest of C.M., 282 Ga.App. 502, 507(2), 639 S.E.2d 323 (2006).
Judgment affirmed.
PHIPPS, P.J., and ANDREWS, J., concur.