A11A2183. IN THE INTEREST OF Z. P., a child.
(724 SE2d 48)

DOYLE, Presiding Judge.

The juvenile court terminated the natural mother's parental rights to her ten-month-old daughter, Z. P.[1] The mother appeals, challenging the sufficiency of the evidence. We affirm, for reasons that follow.

Our responsibility on appeal is to determine

whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier

---

[1] The father's rights were also terminated. He is not a party to this appeal.

of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[2]

So viewed, the record shows that on May 26, 2010, two days after Z. P. was born, the Whitfield County Department of Family and Children Services ("the Department") filed a complaint alleging that Z. P. and her mother had tested positive for methamphetamine at the child's birth. The juvenile court awarded custody of Z. P. to the Department, and the infant was initially placed in a nonrelative foster home, but subsequently transferred to Steven and Wendy Bates, paternal relatives, when she was seven weeks old.

On July 7, 2010, the juvenile court entered a provisional order adjudicating Z. P. deprived as to both the mother and putative biological father and subsequently finalized the provisional order on September 3, 2010; the deprivation finding was not appealed by either parent. On July 28, 2010, the court adopted the Department's nonreunification/termination/adoption case plan, which required the mother to maintain steady employment and housing for six months, to pay child support, to maintain meaningful contact with Z. P. through visitation, to complete a parenting class, to complete a psychological evaluation and any recommended treatment, to successfully complete drug and alcohol counseling, and to remain drug and alcohol free for six months. On February 17, 2011, the mother filed a motion to establish visitation with the child. Five days later, the Bateses filed a petition to terminate the parents' rights to Z. P.

At the hearing,[3] the mother testified that she had two other children, B. K. and G. K. The mother's parental rights to B. K., who was born in August 1999, were terminated in 2001. G. K., who was six years old at the time of the hearing, had been in the custody of his grandmother since he was two years old. The mother testified that she was uncertain about who had legal custody of G. K., stating that she had let him live with his grandmother since she went to jail in 2007 and that her failure to attempt to regain custody of the child was by choice.

The mother testified that she began using methamphetamine when she was fifteen, and that she had been arrested on drug-related

---

[2] (Punctuation omitted.) *In the Interest of J. E.*, 309 Ga. App. 51, 52 (711 SE2d 5) (2011).

[3] The trial court consolidated the termination petition and the mother's motion for visitation into a single hearing.

charges approximately nine times. Two of her arrests resulted in felony drug convictions. According to the mother, she used methamphetamine five times while pregnant with Z. P., beginning five months into her pregnancy. The mother was arrested on September 22, 2010, for a probation revocation based on a positive drug test, failure to complete community service, and failure to report as required; the mother remained in jail until October 18, 2010, and was then required to report to the Northwest Georgia Day Reporting Center ("NGDRC") the following day to complete the program or return to jail.

In order to complete the NGDRC program, the mother was required to secure employment; attend therapy and other classes, including drug and alcohol treatment; and submit to and pass drug tests. The mother successfully complied with the conditions of the program, including passing drug tests and attending drug treatment and parenting classes.[4] She also obtained a job approximately five weeks before the termination hearing; prior to obtaining that job, the mother last worked in 2007.

Since Z. P.'s birth, the mother has had five separate residences, excluding her time in jail. The mother has paid a total of $120 in child support, with the payments beginning approximately four weeks before the termination hearing.[5] The father had a drug problem during the entire three years that the mother has known him, and the two used methamphetamine together during the mother's pregnancy; there is no evidence that the father has received drug treatment. At the hearing, the mother testified that she would be willing to reconcile with Z. P.'s father upon his release from prison.[6] The mother's motion for visitation, filed when Z. P. was nine months old, was her first attempt to see her daughter after the baby left the hospital in the custody of the Department; the mother made no efforts whatsoever to contact the child or the Bateses to inquire about her. The mother also admitted that she missed several juvenile court dates regarding custody of Z. P. because she was afraid she would be arrested on her outstanding warrant(s).

Stephen Bates testified that he and his wife, who have two other children, want to adopt Z. P. When Z. P. began living with the Bateses, she suffered from tremors, and she has had breathing problems. The Bateses administer breathing treatments to Z. P., who is in the bottom fifth growth percentile, has possible lung problems, and has

---

[4] The NGDRC program was the mother's first organized treatment program.

[5] The mother conceded that she spent more money on the purchase of methamphetamine while pregnant with Z. P. than she paid to support the child since her birth.

[6] The mother spoke with the father two weeks prior to the termination hearing before he was sent to prison for violating his parole.

problems sleeping through the night. Z. P. has been hospitalized twice for pneumonia. After one of the hospitalizations, Stephen quit his military job to help care for her, but he and his wife both retained employment, which they have held for 24 and 14 years, respectively. Stephen has never met the mother.

The guardian ad litem appointed for Z. P. testified at trial that in his opinion there was overwhelming evidence to support the termination of the mother and father's parental rights and to grant the Bateses' petition for permanent custody.

In the termination order, the juvenile court found that the mother "repeatedly perjured herself in her testimony before the court." The court stated that

> both parents have a history of chronic[,] un-rehabilitated abuse of illegal, intoxicating substances with the effect of rendering them incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child. While the court applauds the mother's apparent compliance with mandated treatment, the court has no confidence the mother will be able to maintain her sobriety after only one attempt at rehabilitation, especially considering that she must complete that treatment or go to jail, and especially considering that she has maintained her sobriety for only five months. The parents have convictions for felony charges and imprisonment therefor[,] which have had a demonstrable negative effect on the quality of the parent[-]children relationship. Indeed, the parents have absolutely no relationship with this child due to their legal problems and drug abuse problems. Their drug abuse and felony convictions have rendered them completely incapable of providing for this child in any way. Their drug abuse and felony convictions have caused them to have absolutely no parental bond or relationship with this child, and they have abandoned this child since her birth. Neither parent has seen the child since she was born.

The court also stated that it "is concerned that despite allegedly knowing relapse triggers, the mother has subjected herself to same, and would consider reconciling with the father."

To terminate a parent's rights to a child, the juvenile court must find clear and convincing evidence of "parental misconduct or inability" in that

> (i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care

or control by the parent in question is the cause of the child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[7]

1. Here, the mother argues that there was insufficient evidence of deprivation or parental inability on her part at the time of the termination hearing to support the juvenile court's determination. We disagree. To prove that Z. P. was deprived under the circumstances here, the Bateses were required to present evidence that the child was "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[8] In this case, because Z. P. has been in the custody of DFCS and cared for by the Bateses, the proper inquiry is whether she would be deprived if returned to the mother's care and control as of the date of the termination hearing.[9]

The mother has a 12-year history of drug addiction, and she repeatedly used methamphetamine while pregnant with Z. P. The mother has two other children, neither of whom are in her custody. She also has multiple felony drug convictions, and she was in jail after Z. P.'s birth. Although the mother completed a drug treatment program, it was her first attempt at drug rehabilitation and was court-ordered. The mother failed to financially support Z. P. until four weeks before the termination hearing. Since giving birth to Z. P., the mother has had five separate residences, and she was unemployed from 2007 until February 2011. Most importantly, the mother made no attempt whatsoever to visit Z. P. until she filed her motion for visitation when Z. P. was nine months old, and she made no attempts to contact the Bateses to inquire about Z. P. Given the evidence presented, the trial court did not err by finding that Z. P. was deprived at the time of the termination hearing and that the mother was the cause of the deprivation.[10]

2. The mother further contends that there was insufficient evidence that Z. P.'s deprivation was likely to continue and would not be remedied. Specifically, the mother points out that she has resolved

---

[7] OCGA § 15-11-94 (b) (4) (A).

[8] OCGA § 15-11-2 (8) (A).

[9] See *In the Interest of C. H.*, 305 Ga. App. 549, 559 (2) (a) (700 SE2d 203) (2010), citing *In the Interest of P. D. W.*, 296 Ga. App. 189, 191 (1) (a) (674 SE2d 338) (2009).

[10] See *In the Interest of R. B.*, 309 Ga. App. 407, 409-412 (1) (710 SE2d 611) (2011); *In the Interest of S. R. M.*, 283 Ga. App. 463, 465-466 (1) (641 SE2d 666) (2007).

her legal issues, completed drug treatment, and obtained employ-ment and housing.

The juvenile court was, however, permitted to consider the mother's past conduct in determining whether Z. P.'s deprivation was likely to continue.[11] "This is because recent improvements do not establish that the parent is capable of maintaining the progress[,] and the decision as to a child's future must rest on more than positive promises [that] are contrary to negative past fact."[12] Thus, despite the mother's recent completion of drug treatment and employment, the juvenile court was entitled to weigh her progress against her past conduct and "to assign less weight to her assertion of sudden parental fitness based on these belated efforts. . . ."[13]

> As we have said time and again, in considering a parent's claims of recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation. Likewise, judging the cred-ibility of her good intentions was a task for the juvenile court. And on appeal, we will neither reweigh that evidence nor reevaluate the credibility of the witnesses.[14]

Here, we echo the juvenile court's commendation of the moth-er's recent efforts, and we note that additional time might well have revealed that the mother has in fact turned her life around. Never-theless, given the evidence that the mother's sobriety was recent, her compliance with the drug treatment was mandatory to avoid jail, she failed to adequately support Z. P., her testimony in the termination hearing was evasive, she relinquished and lost custody of her two other children, she made no efforts whatsoever to contact or visit Z. P. until the child was nine months old, and she was willing to reconcile with the father, who was also addicted to methamphet-amine and had not completed any type of drug treatment, the trial court was authorized to find that the deprivation was likely to continue.[15]

3. Finally, the mother argues that the trial court abused its

---

[11] See In the Interest of M. S. S., 308 Ga. App. 614, 621-622 (2) (a) (708 SE2d 570) (2011).

[12] (Punctuation omitted.) Id. at 622.

[13] (Punctuation omitted.) Id., citing In the Interest of D. L. T., 283 Ga. App. 223, 227 (1) (641 SE2d 236) (2007). See also In the Interest of J. S., 232 Ga. App. 876, 880 (1) (502 SE2d 788) (1998) (noting that "a few months of partial stability does not establish for the court that the parent[ ] [is] capable of maintaining the progress") (punctuation omitted).

[14] (Citations and punctuation omitted.) In the Interest of M. S. S., 308 Ga. App. at 622 (2) (a).

[15] See In the Interest of C. A. S., 308 Ga. App. 757, 762 (4) (708 SE2d 655) (2011); In the Interest of M. S. S., 308 Ga. App. at 621-622 (2) (a).

discretion by concluding that termination was in Z. P.'s best interest.

> In determining how the interest of the child is best
> served, the juvenile court is vested with a broad discretion
> which will not be controlled in the absence of manifest
> abuse. And the same factors that show parental misconduct
> and inability support a finding that termination of parental
> rights is in the child's best interest.[16]

Based on the evidence of the mother's prior drug problems, her failure to support or develop any bond or contact with Z. P., her willingness to reconcile with the father, and the Bateses' desire to adopt Z. P., we conclude that the trial court did not manifestly abuse its discretion by finding that termination was in Z. P.'s best interest.[17]
*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED FEBRUARY 24, 2012.

*Katherine L. O'Gwin*, for appellant.
*Rodney Q. Quarles*, for appellee.

---

[16] (Citation and punctuation omitted.) *In the Interest of C. A. S.*, 308 Ga. App. at 762 (5).
[17] See id., citing *In the Interest of C. M.*, 282 Ga. App. 502, 507 (2) (639 SE2d 323) (2006). See also *In the Interest of C. J. L. C.*, 293 Ga. App. 848, 852 (1) (c) (668 SE2d 821) (2008).