**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 11, 2012**

# In the Court of Appeals of Georgia

A12A0650. IN THE INTEREST OF A. T., T. T., AND B. T.,   DO-030
   children.

DOYLE, Presiding Judge.

The father of A. T., T. T., and B. T. appeals the termination of his parental

rights, contending that there was not clear and convincing evidence that the causes

of the deprivation were likely to continue or that the deprivation is likely to cause

serious physical, mental, emotional, or moral harm to the children. We affirm, for the

reasons that follow.

The record shows that B. T., T. T., and A. T.,[1] currently ages nine, seven, and five, respectively, were placed in the custody of the Department of Family and Child Services ("DFCS") in May 2008, after two of the children accidentally started a fire in the family's apartment.[2] Police searched the house after the fire was extinguished and discovered drugs, as well as a shotgun under the bed. The mother was arrested and charged with drug and gun possession and failure to properly supervise the children; the father was charged with possession of cocaine and possession of a firearm by a convicted felon. DFCS took custody of the children at that time and placed them in foster care.[3]

---

[1] The father is the biological father of the two younger children, but during the pendency of the case, he learned that B. T., who was named after him, is not his biological child. The father continually expressed his desire to parent B. T. and legitimated all three children (B. T.'s biological father voluntarily surrendered his parental rights on January 20, 2011).

[2] The mother was allegedly under the influence of drugs at the time and had fallen asleep, leaving the children unsupervised; the father was not home. The mother escaped the home, leaving the children; the oldest two children escaped through a window, but A. T., who was an infant, suffered smoke inhalation before he was rescued.

[3] DFCS made efforts to place the children with relatives after the parents' arrests and during the pendency of the case, but those efforts were unsuccessful, so the children remained in foster care.

Following a May 30, 2008 hearing, the father stipulated that the children were deprived based on his continued incarceration, and he conceded that he had a substance abuse problem and was in need of treatment.[4] The father was subsequently convicted of the possession charges and sentenced to serve ten years on probation.

A reunification case plan was developed for the father that required him to submit to random drug tests, complete drug treatment, provide proof of income, secure stable housing, complete a psychological evaluation, and complete parenting classes. After the father was released from jail, he returned to his job, but he was fired a few months thereafter and remained unemployed for more than a year before obtaining a job in June 2010. After an initial slow start towards compliance with his case plan, the father completed his psychological evaluation and successfully completed drug treatment; he tested negative for drugs during all random drug tests beginning when the children were initially placed in foster care. The father did not, however, complete individual counseling.

DFCS planned to return the children to the father's care in 2009 and arranged for an evaluation of his Fulton County home. After the home visit but before the final evaluation was completed, the father moved into a home in Clayton County with a

---

[4] The mother also stipulated that the children were deprived.

girlfriend and requested a home evaluation there.[5] DFCS arranged for Clayton County to conduct a home evaluation, but the father reconciled with and married the children's mother in 2009 and moved back in with her in Fulton County. The parents began having unsupervised visitation with the children. Thereafter, the father called DFCS and reported that the mother was using drugs while the children were present in the home during visitation, and DFCS removed the children. The parents had a subsequent physical altercation in the apartment, and both were arrested. The father has since pleaded guilty to simple battery and received an additional six months of probation.

The father subsequently filed for divorce, and in August 2010, he moved in with another girlfriend, D. V., in Douglasville. The father obtained a job in June 2010, earning approximately $1,000 per month; he was required to pay $300 per month in probation fees and $366 in child support for the children, plus an additional $112 for another child not at issue in this case. D. V. has a five-bedroom house and three children of her own. D. V. testified that she and the father plan to marry, and she agreed to help support the father and the children.

---

[5] The father's relationship with the girlfriend lasted approximately a year.

At the termination hearing, the father conceded that he had lived in six different homes since the children were taken into foster care. According to the father, he had difficulty finding a job and housing because he was on probation and had a criminal history. He had not been paying child support for the children, and his driver's license had been suspended as a result; at the time of the final hearing, the father owed $1,000 in child support. Shortly before the final hearing, however, the father arranged to have his probation fees converted to community service hours. The father regularly visited with the children, but he did not see them between August 2010, when his visitation rights were suspended, and February 12, 2011.

The DFCS caseworker testified at the final deprivation hearing that the father had not completed the recommended counseling, and the caseworker was concerned that his housing arrangements and financial situation were not stable. The children had been in the same foster home since 2008. The foster parents "want to adopt one and are considering adopting another"; B. T. is resistant to adoption and wants to remain with family.

The guardian ad litem recommended termination for the younger two, but not B. T.[6] The juvenile court rejected this recommendation and concluded that termination was in the best interest of all three children. The court noted that the father loves the children very much, has remained committed to them, has visited them consistently, and has acted responsibly to protect them since becoming sober. Nevertheless, the court concluded that based on his track record, the father will not be able to provide the children with the permanence and stability they need. Accordingly, it terminated the father's rights to all three children, and this appeal followed.

A juvenile court considering a petition to terminate parental rights must engage in a two-step analysis:

> First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest

---

[6] The guardian ad litem, however, filed an appellate brief urging this Court to affirm the termination order for all three children.

of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[7]

"On appeal, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated."[8]

1. Here, the father argues that there was insufficient evidence that the children's deprivation was likely to continue. We disagree.

"In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent."[9] "And a juvenile court may place more weight on negative past facts than promises of future conduct."[10]

As we have said time and again, in considering a parent's claims of recent improvement, the trial court, not the appellate court, determines

---

[7] (Punctuation omitted.) *In the Interest of T. B.*, 249 Ga. App. 283, 285-286 (1) (548 SE2d 45) (2001), quoting *In the Interest of V. M. T.*, 243 Ga. App. 732, 735-736 (3) (534 SE2d 452) (2000).

[8] (Punctuation omitted.) *T. B.*, 249 Ga. App. at 286 (1).

[9] (Citation omitted.) *In the Interest of J. C.*, 237 Ga. App. 533, 535-536 (1) (515 SE2d 847) (1999).

[10] (Punctuation omitted.) *In the Interest of A. C.*, 280 Ga. App. 212, 217 (1) (c), (633 SE2d 609) (2006).

whether a parent's conduct warrants hope of rehabilitation. Likewise, judging the credibility of [his] good intentions was a task for the juvenile court. And on appeal, we will neither reweigh that evidence nor reevaluate the credibility of the witnesses.[11]

Here, the evidence shows that the father made substantial progress in his case plan, including completing a psychological evaluation, attending parenting classes, successfully completing substance abuse treatment, and remaining drug-free for three years. But evidence was also presented that the father pled guilty to battery against the mother after DFCS became involved with the family, he was behind in his child support payments, he failed to complete individual counseling, and he failed to visit with the children in the six months preceding the hearing. The father also had six separate residences during the pendency of this case, and although he was living with D. V. at the time of the final hearing, he conceded that he was dependent upon her for financial support.

Thus, while we commend the father's efforts, particularly his efforts to remain drug-free, "judging the credibility of [his] good intentions was a task for the juvenile

---

[11] (Punctuation omitted.) *In the Interest of Z. P.*, 314 Ga. App. 347, 352 (2) (724 SE2d 48) (2012).

8

court."[12] Based on the evidence presented, the juvenile court was authorized to conclude that the cause of the children's deprivation was likely to continue.[13]

2. The father also argues that there was insufficient clear and convincing evidence to support the juvenile court's finding that continued deprivation would likely cause serious physical, mental, emotional, or moral harm to the children. Again, we disagree.

"The same evidence that the child[ren]'s deprivation is likely to continue . . . may also support a finding that [children] will likely suffer serious harm from that continued deprivation."[14] As we concluded in Division 1, supra, there was clear and convincing evidence that the cause of the children's deprivation was likely to continue.

The record also shows that the children have been in the same foster home for three years and are doing well, and T. T. and A. T. are bonded with the foster parents.

---

[12] (Punctuation omitted.) *In the Interest of R. J. D. B.*, 305 Ga. App. 888, 894 (1) (a) (700 SE2d 898) (2010).

[13] See *In the Interest of S. N. H.*, 300 Ga. App. 321, 327 (1) (c) (685 SE2d 290) (2009); *In the Interest of C. M.*, 282 Ga. App. 502, 505-506 (1) (c) (639 SE2d 323) (2006).

[14] *In the Interest of D. L. T.*, 283 Ga. App. 223, 228 (2) (641 SE2d 236) (2007).

Further, the children's therapist testified that permanency was "very important" for all three children.

"Having reviewed the record in this case, we find that there is sufficient clear and convincing evidence to support the juvenile court's conclusion that the child[ren are] likely to suffer serious harm if the [father's] parental rights are not terminated and the status quo is allowed to continue indefinitely."[15]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[15] Id. at 228-229 (2). See also *In the Interest of B. I. F.*, 264 Ga. App. 777, 781 (1) (592 SE2d 441) (2003) ("[I]t is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems.").